UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>  Plaintiff,<br>v.<br>HIGHLAND PARTNERSHIP, INC., et al.,<br><br>  Defendants. | Case No.10cv2503 AJB (POR)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS<br><br>(Doc. No. 46) |

Presently before the Court is Plaintiff Travelers Casualty and Surety Company of America's ("Travelers") Motion to Dismiss Defendants' Counterclaims against Travelers. (Doc. 46.) For the following reasons, the motion is granted in part and denied in part.

**I.**

**BACKGROUND**

On August 18, 2004, Highland Partnership ("Highland") entered into a contract with First Avenue Partners ("FAP") for the construction of a project called the Diegan Hotel in downtown San Diego. (Counterclaim ¶ 13.) Highland was the general contractor for construction, and FAP was the developer and owner of the hotel. (*Id.*) To finance the construction, FAP obtained a loan of $67,815,000 from WestLB, a banking corporation. (*Id.* at ¶ 14.)

In April 2006, Highland obtained a payment bond and a performance bond from Travelers in connection with the Project. (*Id.* at ¶ 15.) Travelers required Highland to enter into an Indemnity Agreement. (*Id.*) Also in April 2006, WestLB asked Highland to sign a Consent and Agreement, purporting to subordinate Highland's mechanic's lien and all other related rights for the Project to the rights of WestLB. (*Id.* at ¶ 16.) Highland claims it sought advice from Travelers as to whether or not it should sign the Consent and Agreement, and that Travelers advised Highland to sign it without revising or removing the subordination language. (*Id.* at ¶ 17.)

On May 5, 2008, Highland terminated its agreement with FAP due to numerous breaches by FAP. (*Id.* at ¶ 18.) Highland recorded a mechanic's lien in the amount of $14,500,000. (*Id.* at ¶ 19.)  In November 2008, Travelers and Highland entered a Joint Defense Agreement to work together against the claims of FAP and other subcontractors, suppliers, and trade unions seeking payment as a result of work on the Project. (*Id.* at ¶ 21.)  Highland claims it spent significant time and expense in the arbitration, which ultimately found that Travelers' performance bond was exonerated due to FAP's breach of the construction agreement. (*Id.* at ¶ 22-23.)

Meanwhile, Harris Concrete filed a lawsuit claiming breach of its subcontract against Highland, although Highland claims Harris had been paid in full. In full settlement of the lawsuit filed by Harris, and over Defendants' strong objections, Travelers agreed to pay Harris $250,000 on the payment bond. (*Id.* at ¶ 25-26.)

FAP is now in bankruptcy, and Highland is at risk of losing its lien position as a result of the Consent and Agreement, since WestLB has asserted that its lien has priority over Highland's claims. If WestLB's priority position prevails, it will prevent Highland from ever being paid out of the bankruptcy estate. (*Id.* at ¶ 39-40.)

Plaintiff Travelers filed its complaint on December 6, 2010, seeking indemnity from Defendants for payments it made to settle payment bond claims, as well as fees and costs incurred. (Doc. No. 1.) On March 4, 2011, Defendants filed their Answer and Counterclaims (Doc. No. 36), and Travelers filed the instant Motion to Dismiss on March 24, 2011.

Defendants allege five counterclaims for relief against Travelers: (1) negligence, (2) breach of fiduciary duty, (3) breach of contract (as to Payment Bond and Indemnity Agreement), (4) breach of contract (as to Joint Defense Agreement), and (5) breach of the covenant of good faith and fair dealing.

## II.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

## III.

## DISCUSSION

Travelers moves to dismiss all claims against it for failing to state a claim. Each cause of action is discussed in turn.

### 1.         Negligence against Travelers

Travelers contends the negligence claim fails because it does not owe a duty of care to Defendants. It asserts that its relationship with Defendants is an ordinary arms-length contractual relationship, and that consequently, tort-based recovery is precluded.

Defendants allege that a duty of care exists, stemming from a number of legal theories, including the "fiduciary, confidential, or special relationship" between Defendants and Travelers, the negligent undertaking ("Good Samaritan") doctrine, and negligent misrepresentation. According to these arguments, when Travelers undertook to supply legal advice to Defendants, it voluntarily assumed the independent duty to use due care and provide accurate advice. Instead, Travelers ignored the foreseeable and substantial risk of harm to Defendants when it advised Highland to execute the Consent and Agreement without also advising it to remove, delete, or otherwise edit the subordination language. Justifiably relying on Travelers' advice, Highland executed the Consent and Agreement, to its alleged detriment.

Defendants' allegations regarding a duty of care are not persuasive. They have not sufficiently explained Highland's alleged "fiduciary/confidential/special" relationship with Travelers, and it appears Travelers was under no obligation to provide the legal advice that led to this dispute. Defendants state only that Highland and Travelers have worked together on previous projects, and that "[a]s a result of this close and long-standing relationship, [Highland] has reposed a great deal of trust and confidence in Travelers and relies on Travelers to provide it with accurate information and good advice . . . ." (Counterclaim ¶ 44.) Moreover, Highland is a sophisticated commercial entity and cannot pretend it was helplessly relying on Travelers' advice when it signed the Consent and Agreement.

Defendants rely on *AIM Ins. Co. v. Culcasi*, 229 Cal. App. 3d 209 (Cal. Ct. App. 1991), which allowed a negligence claim when an employer failed to sign up a new employee for a health insurance policy, and the employee was subsequently injured in a car accident and denied insurance coverage. However, that situation is not analogous: it was characterized by the employer's superior bargaining power and the employee's vulnerability. Here, by contrast, Defendants have not shown any such superior bargaining power by Travelers or vulnerability by Highland, and it seems unlikely that either of those conditions exists in an ordinary contractual relationship between two sophisticated commercial

entities. Defendants have not sufficiently alleged a duty of care.

Importantly, where the contractual relationship between the parties is not out of the "ordinary commercial context," claims based in tort cannot be sustained. *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal. App. 3d 726, 731 (1989); *see also Foley v. Interactive Data Corps.*, 47 Cal. 3d 654, 693-700 (1988). Here, Defendants have not sufficiently shown that Highland's relationship with Travelers was out of the ordinary commercial context. Although there is an exception to this general rule for insurance policies, case law has expressly held that surety bonding is *not* insurance. *See Cates Construction, Inc. v. Talbot*, 21 Cal. 4th 28, 53 (1999) ("[U]nlike an insurance policy, the typical performance bond bears no indicia of adhesion or disparate bargaining power that might support tort recovery by an obligee."). Significantly, as the California Supreme Court noted in *Cates*, "[T]his court has ***never recognized the availability of tort remedies for breaches occurring in the context of a construction performance bond*** or any other so-called 'contract of suretyship.'" *Id.* at 44-45 (emphasis added). As Travelers argues, under these circumstances it is the Indemnity Agreement–not an undefined tort duty–that governs the obligations of Travelers and Defendants.

Consequently, even if the facts are taken as true, Defendants' negligence claim fails as a matter of law. It is therefore dismissed, but with leave to amend. In the amended counterclaim, Defendants must present a plausible *independent* ground for a duty of care, outside of the contractual relationship between Travelers and Highland.

**2.    Breach of Fiduciary Duty against Travelers**

Travelers argues that the breach of fiduciary duty claim fails because it owes no fiduciary duty to the Defendants by virtue of the bonds or the Indemnity Agreement, which are solely arms-length commercial contracts.

Similar to the negligence claim, Defendants allege that a "fiduciary/confidential/special" relationship exists between Highland and Travelers because the parties had previously worked together on construction projects. Travelers allegedly stood in a position of trust and confidence to Highland and its principals and never advised Highland that the Consent and Agreement was not in its best interests.

Defendants rely on a quotation from *Cruz v. United States*, 219 F.Supp.2d 1027, 1039 ("The existence of a fiduciary duty is generally a question of fact which cannot be resolved at the motion to

dismiss stage."). In fact, *Cruz* goes on to dismiss the fiduciary duty claim, noting that the "[c]ourt need not accept [the] conclusory allegation that such a relationship existed." *Id.* Similarly, here, we need not accept that such a relationship exists based only on a conclusory assertion that the two parties had a history of doing business together. Moreover, as noted by Defendants, fiduciary relationships are characterized by the vulnerability of one party and the empowerment of the other. *Richelle L. v. Roman Catholic Archbishop*, 106 Cal.App.4th 257, 272 (2003). But again, Highland is a sophisticated party, not a vulnerable contractor preyed upon by Travelers. Defendants have not sufficiently alleged Highland's vulnerability and Travelers' empowerment and therefore have not pled facts that would give rise to a fiduciary relationship.

Even if the facts more clearly supported the presence of a fiduciary relationship, the case law establishes that fiduciary relationships do not exist in the surety context. *See Cates*, 21 Cal.4th at 44, 56 (surety bonds, unlike typical insurance policies, are not characterized by "elements of adhesion, public interest, or *fiduciary responsibility*") (emphasis added). Defendants' breach of fiduciary duty claim therefore fails and is dismissed with leave to amend.

### 3. Breach of Contract against Travelers (Count 1)

Defendants allege that when Travelers advised Highland to sign the Consent and Agreement with WestLB, it breached the payment bond and the Indemnity Agreement by breaching the parties' mutual intentions. They claim Travelers' negligent advice materially altered the risks contemplated by the parties in these agreements, breached the mutual intent of the payment bond and Indemnity Agreement, and discharged Defendants' obligations to perform under the Indemnity Agreement.

Travelers argues that this claim fails because the Defendants have not pointed to any provision of the Indemnity Agreement or payment bond that Travelers allegedly breached. Further, Travelers asserts that nothing in the Indemnity Agreement required it to provide business or legal advice to Highland or to protect the Defendants' interests. To the contrary, the Indemnity Agreement was crafted solely to protect Travelers' interests. The Consent and Agreement governs Highland's rights and obligations to WestLB. It has no effect on the Indemnity Agreement, and its existence does not equate to a breach of the Indemnity Agreement.

It appears Travelers was under no contractual obligation to give legal advice to Highland or to otherwise watch over Highland's interests. Defendants have failed to allege sufficiently how these contracts were breached. As the Court ruled at the hearing on September 16, 2011, this claim is dismissed with leave to amend.

### 4. Breach of Contract against Travelers (Count 2)

Defendants allege that under the Travelers-Highland Joint Defense Agreement, Travelers agreed to act reasonably in defending against the payment and performance bond claims. Defendants claim Travelers breached the Agreement by incurring excessive and unreasonable attorneys' fees and costs in defense of the bond claims. Specifically, Travelers has incurred more than $1.2 million in fees and costs, for which it now seeks indemnity. Even though Highland allegedly took the lead in the defense, it claims to have incurred significantly less.

Travelers argues that this claim fails because the relief sought (avoidance of reimbursing Travelers' expenses) contradicts Defendants' obligations under the Indemnity Agreement, in which Defendants agreed to reimburse Travelers for all loss, including attorneys' fees. According to Travelers, Defendants can avoid this express obligation only through a written modification of the Indemnity Agreement, and no such modification exists.

Travelers' arguments, however, point only to the terms of the Indemnity Agreement, not the Joint Defense Agreement. Because the Joint Defense Agreement is a standalone written agreement signed years after the Indemnity Agreement, it need not necessarily be evaluated in conjunction with the Indemnity Agreement. Whether its terms conflict with the Indemnity Agreement is a question of fact not properly resolved at the motion to dismiss stage. As the Court ruled at the hearing on September 16, 2011, Travelers' motion to dismiss this claim is denied.

### 5. Breach of Covenant of Good Faith and Fair Dealing against Travelers

Defendants allege that the implied covenant of good faith and fair dealing required Travelers to consider their interests as much as its own interests related to the Project. Travelers allegedly breached the covenant by advising Highland to sign the Consent and Agreement, since Travelers was in a position of superior knowledge and experience in understanding its nature and effect.

Travelers argues that although the counterclaim is unclear as to whether this cause of action is tort-based or contract-based, it fails under either. Travelers asserts that the tort-based breach of the implied covenant of good faith and fair dealing is not a recognized cause of action against a surety. *Schmitt v. Ins. Co. of North America*, 230 Cal. App. 3d 245, 256, 257-58 (1991); *Cates*, 21 Cal. 4th at 44. *Mitsui* further supports that implied covenant claims based in tort cannot be sustained where the contractual relationship between the parties is not out of the "ordinary commercial context." *Mitsui*, 212 Cal. App. 3d at 729 (holding that such tort principles have been "extended only to unique fiduciary-like relationships between the parties"). According to Travelers, the arms-length nature of the relationship thus precludes any tort recovery under the covenant of good faith and fair dealing.

Defendants respond that because a "unique fiduciary-like relationship" exists between Travelers and Defendants, the covenant applies. However, as discussed under the first and second causes of action above, Defendants have failed to allege facts that would sufficiently support the existence of such a special fiduciary relationship, as opposed to a general arms-length, surety-principal relationship. Therefore, a breach of covenant claim under tort fails and is dismissed with leave to amend.

Travelers argues that a contract-based claim likewise fails because the covenant is "aimed at making effective the agreement's promises" and cannot be read to prohibit a party from doing what is expressly permitted by the written agreement between them--here, the Indemnity Agreement. *Carma Developers, Inc. v. Marathon Development Calif.*, 2 Cal. 4th 342, 374 (1992); *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1393-94 (1990) (the covenant's purpose is to "protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes"). In response, Defendants argue that the covenant imposes on each party a duty to refrain from doing anything which would render performance of the contract impossible. *April Enters, Inc. v. KTTV*, 147 Cal. App. 3d 805, 816 (1983). They claim Travelers provided erroneous legal advice, which materially altered the contemplated risks and completely frustrated Defendants' ability to perform under the various agreements with Travelers.

As Travelers points out, there is no provision of the Indemnity Agreement requiring it to give legal advice to Highland or to in any way serve the Defendants' interests. Imposing a covenant of good faith and fair dealing that would require Travelers to consider the Defendants' interests would directly

conflict with Travelers' rights under the Indemnity Agreement and is therefore nonsensical. Like the tort-based claim, the contract-based claim for breach of the covenant is dismissed, with leave to amend.

### IV.
### CONCLUSION

For the reasons set forth above, Travelers' motion to dismiss Defendants' Counterclaims is GRANTED with leave to amend as to the first, second, third, and fifth causes of action, and DENIED as to the fourth cause of action. For the tort-based causes of action, Defendants' amended counterclaims must sufficiently demonstrate that the alleged conduct was independent of the parties' contractual relationship. Defendant's must file their amended counterclaims no later than November 4, 2011.

**IT IS SO ORDERED**.

DATED: September 20, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge