1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11 TRAVELERS CASUALTY AND SURETY )    Case No.10cv2503 AJB (POR)
COMPANY OF AMERICA, )

12                           )    ORDER GRANTING IN PART AND
               Plaintiff, )   DENYING IN PART PLAINTIFF'S

13 v.                        )    MOTION TO DISMISS
                       )

14 HIGHLAND PARTNERSHIP, INC., et al., )   (Doc. No. 46)
                       )

15             Defendants. )
                       )

16

17

18       Presently before the Court is Plaintiff Travelers Casualty and Surety Company of America's

19 ("Travelers") Motion to Dismiss Defendants' Counterclaims against Travelers. (Doc. 46.) For the

20 following reasons, the motion is granted in part and denied in part.

**I.**

21 **BACKGROUND**

22       On August 18, 2004, Highland Partnership ("Highland") entered into a contract with First

23 Avenue Partners ("FAP") for the construction of a project called the Diegan Hotel in downtown San

24 Diego. (Counterclaim ¶ 13.) Highland was the general contractor for construction, and FAP was the

25 developer and owner of the hotel. (*Id.*) To finance the construction, FAP obtained a loan of $67,815,000

26 from WestLB, a banking corporation. (*Id.* at ¶ 14.)

27

28

1    In April 2006, Highland obtained a payment bond and a performance bond from Travelers in

2   connection with the Project. (*Id.* at ¶ 15.) Travelers required Highland to enter into an Indemnity

3   Agreement. (*Id.*) Also in April 2006, WestLB asked Highland to sign a Consent and Agreement,

4   purporting to subordinate Highland's mechanic's lien and all other related rights for the Project to the

5   rights of WestLB. (*Id.* at ¶ 16.) Highland claims it sought advice from Travelers as to whether or not it

6   should sign the Consent and Agreement, and that Travelers advised Highland to sign it without revising

7   or removing the subordination language. (*Id.* at ¶ 17.)

8    On May 5, 2008, Highland terminated its agreement with FAP due to numerous breaches by

9   FAP. (*Id.* at ¶ 18.) Highland recorded a mechanic's lien in the amount of $14,500,000. (*Id.* at ¶ 19.)  In

10   November 2008, Travelers and Highland entered a Joint Defense Agreement to work together against

11   the claims of FAP and other subcontractors, suppliers, and trade unions seeking payment as a result of

12   work on the Project. (*Id.* at ¶ 21.)  Highland claims it spent significant time and expense in the

13   arbitration, which ultimately found that Travelers' performance bond was exonerated due to FAP's

14   breach of the construction agreement. (*Id.* at ¶ 22-23.)

15    Meanwhile, Harris Concrete filed a lawsuit claiming breach of its subcontract against Highland,

16   although Highland claims Harris had been paid in full. In full settlement of the lawsuit filed by Harris,

17   and over Defendants' strong objections, Travelers agreed to pay Harris $250,000 on the payment bond.

18   (*Id.* at ¶ 25-26.)

19    FAP is now in bankruptcy, and Highland is at risk of losing its lien position as a result of the

20   Consent and Agreement, since WestLB has asserted that its lien has priority over Highland's claims. If

21   WestLB's priority position prevails, it will prevent Highland from ever being paid out of the bankruptcy

22   estate. (*Id.* at ¶ 39-40.)

23    Plaintiff Travelers filed its complaint on December 6, 2010, seeking indemnity from Defendants

24   for payments it made to settle payment bond claims, as well as fees and costs incurred. (Doc. No. 1.) On

25   March 4, 2011, Defendants filed their Answer and Counterclaims (Doc. No. 36), and Travelers filed the

26   instant Motion to Dismiss on March 24, 2011.

27

28

1   Defendants allege five counterclaims for relief against Travelers: (1) negligence, (2) breach of

2   fiduciary duty, (3) breach of contract (as to Payment Bond and Indemnity Agreement), (4) breach of

3   contract (as to Joint Defense Agreement), and (5) breach of the covenant of good faith and fair dealing.

4                                                   **II.**

5                                         **LEGAL STANDARD**

6   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a

7   court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief

8   may be granted.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   The court may dismiss a

9   complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a

10  cognizable legal claim."  *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir.

11  1996) (citation omitted).  However, a complaint survives a motion to dismiss if it contains "enough facts

12  to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

13  (2007).

14  Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true.

15  *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009).  It is also improper for

16  the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen.*

17  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  On the other

18  hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then

19  determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.  The

20  court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing

21  all reasonable inferences in favor of the nonmoving party.  *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th

22  Cir. 2009) (citations omitted).

23                                                  **III.**

24                                          **DISCUSSION**

25  Travelers moves to dismiss all claims against it for failing to state a claim. Each cause of action

26  is discussed in turn.

27

28

1           **1.          Negligence against Travelers**

2       Travelers contends the negligence claim fails because it does not owe a duty of care to

3   Defendants. It asserts that its relationship with Defendants is an ordinary arms-length contractual

4   relationship, and that consequently, tort-based recovery is precluded.

5       Defendants allege that a duty of care exists, stemming from a number of legal theories, including

6   the "fiduciary, confidential, or special relationship" between Defendants and Travelers, the negligent

7   undertaking ("Good Samaritan") doctrine, and negligent misrepresentation. According to these

8   arguments, when Travelers undertook to supply legal advice to Defendants, it voluntarily assumed the

9   independent duty to use due care and provide accurate advice. Instead, Travelers ignored the foreseeable

10  and substantial risk of harm to Defendants when it advised Highland to execute the Consent and

11  Agreement without also advising it to remove, delete, or otherwise edit the subordination language.

12  Justifiably relying on Travelers' advice, Highland executed the Consent and Agreement, to its alleged

13  detriment.

14      Defendants' allegations regarding a duty of care are not persuasive. They have not sufficiently

15  explained Highland's alleged "fiduciary/confidential/special" relationship with Travelers, and it appears

16  Travelers was under no obligation to provide the legal advice that led to this dispute. Defendants state

17  only that Highland and Travelers have worked together on previous projects, and that "[a]s a result of

18  this close and long-standing relationship, [Highland] has reposed a great deal of trust and confidence in

19  Travelers and relies on Travelers to provide it with accurate information and good advice . . . ."

20  (Counterclaim ¶ 44.) Moreover, Highland is a sophisticated commercial entity and cannot pretend it was

21  helplessly relying on Travelers' advice when it signed the Consent and Agreement.

22      Defendants rely on *AIM Ins. Co. v. Culcasi*, 229 Cal. App. 3d 209 (Cal. Ct. App. 1991), which

23  allowed a negligence claim when an employer failed to sign up a new employee for a health insurance

24  policy, and the employee was subsequently injured in a car accident and denied insurance coverage.

25  However, that situation is not analogous: it  was characterized by the employer's superior bargaining

26  power and the employee's  vulnerability. Here, by contrast, Defendants have not shown any such

27  superior bargaining power by Travelers or vulnerability by Highland, and it seems unlikely that either of

28  those conditions exists in an ordinary contractual relationship between two sophisticated commercial

1   entities. Defendants have not sufficiently alleged a duty of care.

2        Importantly, where the contractual relationship between the parties is not out of the "ordinary

3   commercial context," claims based in tort cannot be sustained. *Mitsui Manufacturers Bank v. Superior*

4   *Court*, 212 Cal. App. 3d 726, 731 (1989); *see also Foley v. Interactive Data Corps.*, 47 Cal. 3d 654,

5   693-700 (1988). Here, Defendants have not sufficiently shown that Highland's relationship with

6   Travelers was out of the ordinary commercial context. Although there is an exception to this general

7   rule for insurance policies, case law has expressly held that surety bonding is *not* insurance. *See Cates*

8   *Construction, Inc. v. Talbot*, 21 Cal. 4th 28, 53 (1999) ("[U]nlike an insurance policy, the typical

9   performance bond bears no indicia of adhesion or disparate bargaining power that might support tort

10  recovery by an obligee."). Significantly, as the California Supreme Court noted in *Cates*, "[T]his court

11  has ***never recognized the availability of tort remedies for breaches occurring in the context of a***

12  ***construction performance bond*** or any other so-called 'contract of suretyship.'" *Id.* at 44-45 (emphasis

13  added). As Travelers argues, under these circumstances it is the Indemnity Agreement–not an undefined

14  tort duty–that governs the obligations of Travelers and Defendants.

15       Consequently, even if the facts are taken as true, Defendants' negligence claim fails as a matter

16  of law. It is therefore dismissed, but with leave to amend. In the amended counterclaim, Defendants

17  must present a plausible *independent* ground for a duty of care, outside of the contractual relationship

18  between Travelers and Highland.

19       **2.      Breach of Fiduciary Duty against Travelers**

20       Travelers argues that the breach of fiduciary duty claim fails because it owes no fiduciary duty to

21  the Defendants by virtue of the bonds or the Indemnity Agreement, which are solely arms-length

22  commercial contracts.

23       Similar to the negligence claim, Defendants allege that a "fiduciary/confidential/special"

24  relationship exists between Highland and Travelers because the parties had previously worked together

25  on construction projects. Travelers allegedly stood in a position of trust and confidence to Highland and

26  its principals and never advised Highland that the Consent and Agreement was not in its best interests.

27       Defendants rely on a quotation from *Cruz v. United States*, 219 F.Supp.2d 1027, 1039 ("The

28  existence of a fiduciary duty is generally a question of fact which cannot be resolved at the motion to

10cv2503

1   dismiss stage."). In fact, *Cruz* goes on to dismiss the fiduciary duty claim, noting that the "[c]ourt need

2   not accept [the] conclusory allegation that such a relationship existed." *Id.* Similarly, here, we need not

3   accept that such a relationship exists based only on a conclusory assertion that the two parties had a

4   history of doing business together. Moreover, as noted by Defendants, fiduciary relationships are

5   characterized by the vulnerability of one party and the empowerment of the other. *Richelle L. v. Roman*

6   *Catholic Archbishop*, 106 Cal.App.4th 257, 272 (2003). But again, Highland is a sophisticated party, not

7   a vulnerable contractor preyed upon by Travelers. Defendants have not sufficiently alleged Highland's

8   vulnerability and Travelers' empowerment and therefore have not pled facts that would give rise to a

9   fiduciary relationship.

10          Even if the facts more clearly supported the presence of a fiduciary relationship, the case law

11   establishes that fiduciary relationships do not exist in the surety context. *See Cates*, 21 Cal.4th at 44, 56

12   (surety bonds, unlike typical insurance policies, are not characterized by "elements of adhesion, public

13   interest, or *fiduciary responsibility*") (emphasis added). Defendants' breach of fiduciary duty claim

14   therefore fails and is dismissed with leave to amend.

15          **3.      Breach of Contract against Travelers (Count 1)**

16          Defendants allege that when Travelers advised Highland to sign the Consent and Agreement

17   with WestLB, it breached the payment bond and the Indemnity Agreement by breaching the parties'

18   mutual intentions. They claim Travelers' negligent advice materially altered the risks contemplated by

19   the parties in these agreements, breached the mutual intent of the payment bond and Indemnity

20   Agreement, and discharged Defendants' obligations to perform under the Indemnity Agreement.

21          Travelers argues that this claim fails because the Defendants have not pointed to any provision

22   of the Indemnity Agreement or payment bond that Travelers allegedly breached. Further, Travelers

23   asserts that nothing in the Indemnity Agreement required it to provide business or legal advice to

24   Highland or to protect the Defendants' interests. To the contrary, the Indemnity Agreement was crafted

25   solely to protect Travelers' interests. The Consent and Agreement governs Highland's rights and

26   obligations to WestLB. It has no effect on the Indemnity Agreement, and its existence does not equate to

27   a breach of the Indemnity Agreement.

28

1    It appears Travelers was under no contractual obligation to give legal advice to Highland or to

2    otherwise watch over Highland's interests. Defendants have failed to allege sufficiently how these

3    contracts were breached. As the Court ruled at the hearing on September 16, 2011, this claim is

4    dismissed with leave to amend.

5        **4.    Breach of Contract against Travelers (Count 2)**

6        Defendants allege that under the Travelers-Highland Joint Defense Agreement, Travelers agreed

7    to act reasonably in defending against the payment and performance bond claims. Defendants claim

8    Travelers breached the Agreement by incurring excessive and unreasonable attorneys' fees and costs in

9    defense of the bond claims. Specifically, Travelers has incurred more than $1.2 million in fees and costs,

10   for which it now seeks indemnity. Even though Highland allegedly took the lead in the defense, it

11   claims to have incurred significantly less.

12       Travelers argues that this claim fails because the relief sought (avoidance of reimbursing

13   Travelers' expenses) contradicts Defendants' obligations under the Indemnity Agreement, in which

14   Defendants agreed to reimburse Travelers for all loss, including attorneys' fees. According to Travelers,

15   Defendants can avoid this express obligation only through a written modification of the Indemnity

16   Agreement, and no such modification exists.

17       Travelers' arguments, however, point only to the terms of the Indemnity Agreement, not the

18   Joint Defense Agreement. Because the Joint Defense Agreement is a standalone written agreement

19   signed years after the Indemnity Agreement, it need not necessarily be evaluated in conjunction with the

20   Indemnity Agreement. Whether its terms conflict with the Indemnity Agreement is a question of fact not

21   properly resolved at the motion to dismiss stage. As the Court ruled at the hearing on September 16,

22   2011, Travelers' motion to dismiss this claim is denied.

23       **5.    Breach of Covenant of Good Faith and Fair Dealing against Travelers**

24       Defendants allege that the implied covenant of good faith and fair dealing required Travelers to

25   consider their interests as much as its own interests related to the Project. Travelers allegedly breached

26   the covenant by advising Highland to sign the Consent and Agreement, since Travelers was in a position

27   of superior knowledge and experience in understanding its nature and effect.

28

10cv2503

1    Travelers argues that although the counterclaim is unclear as to whether this cause of action is

2    tort-based or contract-based, it fails under either. Travelers asserts that the tort-based breach of the

3    implied covenant of good faith and fair dealing is not a recognized cause of action against a surety.

4    *Schmitt v. Ins. Co. of North America*, 230 Cal. App. 3d 245, 256, 257-58 (1991); *Cates*, 21 Cal. 4th at

5    44. *Mitsui* further supports that implied covenant claims based in tort cannot be sustained where the

6    contractual relationship between the parties is not out of the "ordinary commercial context." *Mitsui*, 212

7    Cal. App. 3d at 729 (holding that such tort principles have been "extended only to unique fiduciary-like

8    relationships between the parties"). According to Travelers, the arms-length nature of the relationship

9    thus precludes any tort recovery under the covenant of good faith and fair dealing.

10    Defendants respond that because a "unique fiduciary-like relationship" exists between Travelers

11    and Defendants, the covenant applies. However, as discussed under the first and second causes of action

12    above, Defendants have failed to allege facts that would sufficiently support the existence of such a

13    special fiduciary relationship, as opposed to a general arms-length, surety-principal relationship.

14    Therefore, a breach of covenant claim under tort fails and is dismissed with leave to amend.

15    Travelers argues that a contract-based claim likewise fails because the covenant is "aimed at

16    making effective the agreement's promises" and cannot be read to prohibit a party from doing what is

17    expressly permitted by the written agreement between them--here, the Indemnity Agreement. *Carma*

18    *Developers, Inc. v. Marathon Development Calif.*, 2 Cal. 4th 342, 374 (1992); *Careau & Co. v. Security*

19    *Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1393-94 (1990) (the covenant's purpose is to

20    "protect the express covenants or promises of the contract, not to protect some general public policy

21    interest not directly tied to the contract's purposes"). In response, Defendants argue that the covenant

22    imposes on each party a duty to refrain from doing anything which would render performance of the

23    contract impossible. *April Enters, Inc. v. KTTV*, 147 Cal. App. 3d 805, 816 (1983). They claim Travelers

24    provided erroneous legal advice, which materially altered the contemplated risks and completely

25    frustrated Defendants' ability to perform under the various agreements with Travelers.

26    As Travelers points out, there is no provision of the Indemnity Agreement requiring it to give

27    legal advice to Highland or to in any way serve the Defendants' interests. Imposing a covenant of good

28    faith and fair dealing that would require Travelers to consider the Defendants' interests would directly

10cv2503

1 | conflict with Travelers' rights under the Indemnity Agreement and is therefore nonsensical. Like the

2 | tort-based claim, the contract-based claim  for breach of the covenant is dismissed, with leave to amend.

3 | **IV.**

4 | **CONCLUSION**

5 |      For the reasons set forth above, Travelers' motion to dismiss Defendants' Counterclaims is

6 | GRANTED with leave to amend as to the first, second, third, and fifth causes of action, and DENIED as

7 | to the fourth cause of action. For the tort-based causes of action, Defendants' amended counterclaims

8 | must sufficiently demonstrate that the alleged conduct was independent of the parties' contractual

9 | relationship. Defendant's must file their amended counterclaims no later than November 4, 2011.

10 |      **IT IS SO ORDERED**.

11 |

12 | DATED:  September 20, 2011

13 |

14 | Hon. Anthony J. Battaglia
U.S. District Judge