UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>HIGHLAND PARTNERSHIP, INC., et al.,<br><br>     Defendants. | Case No.10cv2503 AJB (DHB)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>**[Doc. No. 94]** |

  Presently before the Court is Plaintiff Travelers Casualty and Surety Company of America's ("Travelers'") ex parte application for a temporary restraining order and order to show cause regarding issuance of a preliminary injunction. (Doc. No. 94.) Travelers seeks to restrain and enjoin Defendant Highland Partnership, Inc. ("Highland"), pending trial of this action, from "spending, squandering, depleting or otherwise disposing of" the $500,000 settlement proceeds to be received from Merrit & Harris, Inc. ("M&H") in settlement of a related proceeding against M&H in the United States Bankruptcy Court, Central District of California.[1]

  On August 9, 2012, the Court held a hearing on Travelers' ex parte application. For the reasons set forth below, the ex parte application is **DENIED**.

---

[1] That proceeding is entitled *In re 5th Avenue Partners, LLC*, Case No. 8:11-Ap-01095-ES. It is unknown when the settlement proceeds will be disbursed.

# I.
# BACKGROUND

On August 18, 2004, Highland entered into a contract with First Avenue Partners ("FAP") for the construction of a project called the Diegan Hotel in downtown San Diego. Highland was the general contractor for construction, and FAP was the developer and owner of the hotel. To finance the construction, FAP obtained a loan of $67,815,000 from WestLB, a banking corporation.

In April 2006, Highland obtained a payment bond and a performance bond from Travelers in connection with the project. Travelers required Highland to enter into an Indemnity Agreement, in which Highland agreed to cover any contingent losses or expenses incurred in connection with the bonds that Travelers issued on Highland's behalf. On May 8, 2008, Highland terminated the construction agreement with FAP because of numerous alleged breaches by FAP, including non-payment and failure to provide the financial assurances as required by the agreement. As a result, Travelers claims it has been sued by no fewer than nineteen subcontractors or suppliers of Highland who are seeking to recover payments due to them under Travelers' bonds.

Travelers filed its Complaint on December 6, 2010, seeking indemnity from Highland for payments it made to settle bond claims, as well as fees and costs incurred.[2] (Doc. No. 1.) To date, Travelers alleges that it has paid various subcontractors and suppliers a total amount of $1,546,646 as a result of the claims on Travelers' bonds. Travelers claims it has also incurred significant attorneys' fees in defending against the numerous lawsuits brought by the claimants.

# II.
# LEGAL STANDARD

In order to obtain a temporary restraining order or preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th

---

[2] Specifically, Travelers alleges claims for statutory indemnity, breach of contract, *quia timet*, declaratory relief, and specific performance. (Doc. No. 1.)

Cir. 2009) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A temporary restraining order requires a likelihood of irreparable injury in every case. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

## III.

## DISCUSSION

Travelers believes that if Highland receives the settlement proceeds, it will immediately attempt to remove them from Travelers' reach, inhibiting Travelers' ability to collect any amount from Highland pursuant to the Indemnity Agreement. Travelers requests that the Court prohibit Highland from spending, squandering, depleting or otherwise disposing of settlement proceeds, pending trial of the action. Without this relief, Travelers claims it will be left without any remedy if Highland absconds or transfers the funds to avoid its alleged obligations under the Indemnity Agreement.

Travelers asserts that it has met the requirements for injunctive relief because (1) it has established the likely success of its claims against Highland, (2) it will suffer imminent irreparable injury if Highland is not restrained and enjoined from spending, squandering or otherwise disposing of the settlement proceeds, and (3) the balance of equities tips sharply in favor of Travelers.

Highland responds with several arguments. It claims a court may not issue an injunction freezing a defendant's assets prior to a judgment fixing the amount of the debt. *See Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 321, 333 (1999) (holding that a "District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages"). Travelers replies that *Grupo Mexicano* is inapplicable because Travelers has claims for equitable relief as well as money damages, and injunctive relief would be consistent with its *quia timet* claim.

Highland also argues that Travelers has not demonstrated the requisite likelihood of irreparable harm, for at least two reasons. First, it claims Travelers lacks evidence for its assertion that Highland has ceased doing business or is on the brink of insolvency. To the contrary, Highland contends that it

remains an active business and continues to pursue new projects. Second, Highland argues that there is no irreparable harm because Travelers is not entitled to the settlement proceeds. Instead, Highland claims the settlement proceeds are already due and owing to Highland's counsel pursuant to perfected attorneys' liens, and that Travelers will not suffer irreparable harm when the funds it seeks to freeze are not and never were available to satisfy its alleged monetary damages in this action. *See Fletcher v. Davis*, 33 Cal. 4th 61, 66 (2004); *Carroll v. Interstate Brands Corp.*, 99 Cal. App. 4th 1168, 1172 (Cal. Ct. App. 2002) (determining that an attorney's lien is a "secret lien" that is created, and protected, at the time the fee agreement is executed).

      The Court agrees with Highland that Travelers has not met its burden of establishing irreparable harm absent injunctive relief. Travelers has failed to provide sufficient evidence of Highland's actual or pending insolvency. It relies only on a speculative declaration regarding Highland's failure to pay certain debts to subcontractors and Travelers in connection with the construction project. This is not enough to demonstrate that irreparable harm is likely in the absence of an injunction. As noted above, a temporary restraining order or preliminary injunction may be awarded only upon a "clear showing" that the plaintiff is entitled to such relief. In reply, Travelers seems to suggest that Highland must produce evidence of its solvency, including money or other assets, but that is not Highland's burden to bear.

      Here, without more, the Court is not convinced that Highland has ceased doing business or is on the brink of insolvency, which undermines Travelers' entire premise for injunctive relief—namely, that the settlement proceeds are its sole hope for recovery against Highland and thus must be frozen. Consequently, Travelers has not demonstrated the requisite likelihood of irreparable harm absent injunctive relief, and its ex parte application fails for that reason. Because this issue is determinative, the Court need not reach a finding on the parties' other arguments involving attorneys' liens or the doctrine of *quia timet*.[3]

---

[3] The Court notes, however, that if the insolvency issue were not determinative, further documentation would be needed to establish the existence and priority of any attorneys' liens. The Court also notes that the doctrine of *quia timet* is not an appropriate basis for a temporary restraining order. *See Hudson Ins. Co. v. Simmons Constr., LLC*, 2012 U.S. Dist. LEXIS 33907 at *8-9 (D. Az. March 14, 2012) ("Plaintiffs have provided no case, and the Court has not found one, in which the extraordinary

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## IV.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's ex parte application for a temporary restraining order and order to show cause regarding issuance of a preliminary injunction.

**IT IS SO ORDERED.**

DATED: August 10, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge

---

26
27
28

remedy of a Temporary Restraining Order has been issued based on the doctrine of *quia timet*."). Rather, courts should use the traditional standard for preliminary injunctive relief. *See id.* at *9 n.1 ("District Courts have issued TROs granting sureties collateralization. These courts have relied upon the standards for issuing a TRO as set forth in the Federal Rules of Civil Procedure, not on the common-law doctrine of *quia timet*."). Under this standard, as explained above, Travelers has failed to demonstrate the requisite likelihood of irreparable harm, and the Court need reach no further than that.