1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> HIGHLAND PARTNERSHIP, INC., et al., <br><br> Defendants. | Case No.10cv2503 AJB (DHB) <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS FIRST AMENDED COMPLAINT; AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIM <br><br> (Doc. No. 87) |

18    Presently before the Court is Plaintiff Travelers Casualty and Surety Company of America's

19  ("Travelers") motion for summary judgment, (Doc. No. 87), on its First Amended Complaint ("FAC"),

20  (Doc. No. 22).  Travelers also seeks summary judgment on the only cause of action remaining in

21  Defendants' Counterclaim.  (Doc. No. 36.)  On September 17, 2012, Defendants filed an opposition,

22  (Doc. No. 104), and on October 1, 2012, Travelers filed a reply, (Doc. No. 105).  In accordance with

23  Civil Local Rule 7.1.d.1, the Court finds this motion suitable for determination on the papers and

24  without oral argument.  Accordingly, the motion hearing scheduled for November 30, 2012, is hereby

25  vacated.  For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Travelers'

26  motion for summary judgment as to all causes of action set forth in Travelers' FAC, and **GRANTS**

27  Travelers' motion with respect to the remaining cause of action for breach of contract in Defendants'

28  Counterclaim.

### *BACKGROUND*

On August 18, 2004, Highland Partnership ("Highland") entered into a contract with First Avenue Partners ("FAP") for the construction of a project called the Diegan Hotel in downtown San Diego (the "Project").  (Doc. No. 36 ¶ 13.)  Highland was the general contractor for construction, and FAP was the developer and owner of the hotel. (*Id*.)  To finance the construction, FAP obtained a loan in the amount of $67,815,000 from WestLB, a banking corporation. (*Id.* at ¶ 14.)

In April 2006, Highland obtained a labor and materials bond and a performance bond from Travelers in connection with the Project (collectively, the "Bonds").  (*Id*. at ¶ 15.)  Each Bond was issued in the penal sum of $62,999,039.00, with Highland as the principal under the Bonds guaranteeing Highland's payment and performance obligations on the Project. (Doc. No. 87; Brown Decl., ¶ 7.)  As partial consideration for Travelers' issuance of the Bonds, Travelers required Highland to enter into an Indemnity Agreement (the "Indemnity Agreement"). (*Id.*)  The Indemnity Agreement was signed on April 11, 2006, by Defendants Highland Partnership, Bay Boulevard, Ian Murray Gill, Gail Stoorza Gill, John David Gardner, Carolyn Marie Gardner, and the Gill Family Trust.[1]  (Doc. No. 22 ¶ 15; Ex. A.)  Under the terms of the Indemnity Agreement, Defendants are obligated to "exonerate, indemnify and save [Travelers] harmless from and against all Loss."  (*Id*.)  The Indemnity Agreement also requires Defendants to deposit with Travelers, upon demand, an amount as determined by Travelers sufficient to discharge any loss or anticipated loss incurred as a result of issuing the Bonds.[2]  (*Id*. at ¶ 16.)

---

[1]  In August 2007, Defendants Highland Home Builders and Highland Productions executed Riders whereby Highland Home Builders and Highland Productions agreed to become additional indemnitors to the Indemnity Agreement executed by the other Defendants in April 2006. As a result, Highland Home Builders and Highland Productions are also parties to the April 2006 Indemnity Agreement. (Doc. No. 22 ¶ 17; Ex. B.)

[2]  Also in April 2006, WestLB asked Highland to sign a Consent and Agreement, purporting to subordinate Highland's mechanics lien and all other related rights for the Project to the rights of WestLB. (*Id.* at ¶ 16.) Highland claims it sought advice from Travelers as to whether or not it should sign the Consent and Agreement, and that Travelers advised Highland to sign it without revising or removing the subordination language. (*Id*. at ¶ 17.)  These allegations formed the basis for Defendants counterclaim, most of which was dismissed by the Court.  (Doc. No. 73.)

On May 5, 2008, Highland terminated its agreement with FAP due to numerous breaches by FAP.[3]  (*Id*. at ¶ 18.)  This termination resulted in arbitration, wherein Highland, FAP, and Travelers were parties (the "FAP Arbitration").  (Doc. No. 87; Brown Decl., ¶ 10.)  Both FAP and Highland alleged the other breached the Construction Agreement, and FAP also filed a claim against Travelers on the performance bond demanding that Travelers either complete performance on the Project or provide a third party contractor to complete performance.[4]  (Doc. No. 36 ¶ 20.)

In November 2008, Travelers asked Highland to enter into a Joint Defense Agreement to aid in the resolution of claims made by FAP, in addition to other subcontractors, suppliers, and trade unions seeking payment as a result of work on the Project. (*Id*. at ¶ 21.)  Travelers' request was predicated on the fact that it anticipated that given FAP's conduct and non-payment, litigation relating to the Project was inevitable.  (*Id*.)  Highland claims it spent significant time and expense in the FAP Arbitration, which ultimately found that Travelers' performance bond was exonerated due to FAP's breach of the construction agreement. (*Id*. at ¶¶ 22-23.)

In addition to FAP's claims against Travelers, Travelers has been sued by no less than nineteen subcontractors or suppliers of Highland who have sought, or are currently seeking, to receive payment due to them under Travelers' payment Bond. (Doc. No. 87; Brown Decl., ¶ 13.)  A list of these suits and the status of each matter is as follows:[5]

1.  *Alcala Company v. Travelers et al.* (San Diego Superior Court, Case No. 37-2008-00090450). Travelers paid Alcala $75,000 to settle this claim. Settlement was negotiated by Highland.
2.  *Brewer Crane & Rigging v. 5th Avenue Partners, LLC et al*, (San Diego Superior Court, Case No. 37-2008-00086146). Travelers paid Brewer $15,000 to settle this claim. Settlement was negotiated by Highland.
3.  *Casper Concrete Cutting, Inc. v. Highland Partnership, Inc. et al.*, (San Diego Superior Court, Case No. 37-2008-00088718). Travelers paid Casper $80,000 to settle this claim. Settlement was negotiated by Highland.
4.  *Whillock Contracting v. Highland Partnership, Inc. et al.* (San Diego Superior Court, Case No. 37-2009-00082618). Travelers paid Whillock $17,465.78 to settle this claim. Settlement was negotiated by Highland.

---

[3] Highland recorded a mechanic's lien in the amount of $14,500,000, accounting for the labor, services, equipment and/or materials it had provided on the Project.  (Doc. No. 36 ¶ 19.)

[4] FAP's total claims against Travelers exceeded $8,000,000. (Doc. No. 87; Brown Decl., ¶ 11.)

[5] This information is taken from Travelers' motion for summary judgment and attached exhibits. (Doc. No. 87.)

5.   *Quality Cabinet & Fixture Co. v. Highland Partnership, Inc. et al.* (San Diego Superior Court, Case No. 37-2008-00091966. Highland agreed to pay Quality Cabinet $237,000 in payments over a six month term. Travelers agreed to pay and did pay Quality Cabinet upon Highland's failure to make the settlement payments.

6.   *California Comfort Systems USA, Inc. v. 5th Avenue Partners, LLC* (San Diego Superior Court, Case No. 37-2009-00093578). Travelers paid California Comfort $200,000 to settle this claim.

7.   *Gabbard Hardware Co., Inc. v. Highland Partnership, Inc. et al.* (San Diego Superior Court, Case No. 37-2009-00099879). Travelers paid Gabbard $65,000 to settle this claim.

8.   *Diversified Window Coverings, Inc. v. Highland Partnership, Inc. et al.* (San Diego Superior Court, Case No. 37-2008-00093719). Travelers paid Diversified $26,000 to settle this claim.

9.   *Harris Concrete v. Highland Partnership, Inc. et al.* (American Arbitration Association, Case No. 73 110 Y 03350 09 MIlA). Travelers paid Harris $250,000 to settle this claim.

10.   *Cecilia's Safety Service, Inc. v. Highland Partnership, Inc. et al.* (San Diego Superior Court, Case No. 37-2008-00091709). Travelers paid Cecilia $58,000 to settle this claim.

11.   *Howard's Rug Company of San Diego v. Highland Partnership, Inc. et al.* (San Diego Superior Court, Case No. 37-2009-00091525). Travelers paid Howard $55,000 to settle this claim.

12.   *Wirtz Tile & Stone v. Highland Partnership, Inc. et al.* (San Diego Superior Court, Case No. 37-2009-00104652). Travelers paid Wirtz $112,000 to settle this claim.

13.   *San Diego Steel Holdings f/k/a Pacific Coast Steel, Inc. v. 5th Avenue Partners, LLC, et al.*, (San Diego Superior Court, Case No. 37-2008-00088969). Travelers paid San Diego Steel $204,369 to settle this claim.

14.   *Carpenters Southwest Admin. Corp. v. 5th Avenue Partners, LLC, et al.* (San Diego Superior Court, Case No. 37-2007-00084095). Travelers paid Carpenters $39,250 to settle this claim.

15.   *Buxcon Sheet Metal, Inc. v. Fifth Avenue Partners, LLC, et al.* (San Diego Superior Court, Case No. 37-2011-00095723-CU-BC-CTL). Buxcon dismissed Travelers from this action.

16.   *Dynalectric Co., Inc. v. 5th Avenue Partners, LLC et al.* (San Diego Superior Court, Case No. 37-2009-00088141). This suit is pending. Dynalectric claims as due $1,432,848 from Travelers.

17.   *Allied West Co., Inc. v. TWD, LLC et al.* (San Diego Superior Court, Case No. 37-2008-00092086.) This suit is pending. Allied claims as due $39,650 from Travelers.

18.   *Raymond San Diego, Inc. v. 5th Avenue Partners, LLC, et al.* (San Diego Superior Court, Case No. 37-2009-00091892). This suit is pending. Raymond claims as due $237,647 from Travelers.

19.   *Angus Asphalt, Inc. v. Fifth Avenue Partners, LLC, et al.* (San Diego Superior Court, Case No. 37-2009-00092535-CU-BC-CTL.) This suit is pending. Angus claims as due $28,511 from Travelers.

To date, Travelers' total losses resulting from payment on the Bonds is $3,592,854; $1,549,187 of which has been paid to settle claims, and $2,043,667 of which has been paid as attorneys' fees and other expenses associated with payment on the Bonds.  In addition, Travelers alleges it has been, and continues to be, required to investigate claims, adjust claims, and defend itself against claims on the

1   Bonds.  (Doc. No. 87.)  Travelers estimates that its current exposure on the Payment Bond is in excess

2   of $2,000,000, inclusive of expenses and fees. (*Id.*)

3          On December 6, 2010, Travelers filed the original Complaint against Defendants seeking

4   indemnity for payments it already made to settle Bond claims, as well as fees and costs incurred.  (Doc.

5   No. 1.)  On January 24, 2011, Travelers filed the operative FAC, and on March 4, 2011, Defendants

6   filed their Answer and Counterclaims.[6]  (Doc. No. 36.)  On March 24, 2011, Travelers moved to dismiss

7   Defendants' counterclaims, (Doc. No. 46), and on September 20, 2011, the Court granted Travelers'

8   motion with respect to all claims, with leave to amend, except Defendants' fourth cause of action for

9   breach of the Joint Defense Agreement, (Doc. No. 73).  As Defendants elected not to file an amended

10  Counterclaim, the only cause of action remaining alleges Travelers breached the Joint Defense

11  Agreement.  On July, 16, 2012, Travelers filed the instant motion for summary judgment requesting

12  adjudication of their FAC and Defendants' remaining Counterclaim. (Doc. No. 87.)

13                                    ***DISCUSSION***

14         A surety bond is a "written instrument executed by the principal and surety in which the surety

15  agrees to answer for the debt, default, or miscarriage of the principal." *Butterfield v. Northwestern Nat'l*

16  *Ins. Co.* (1980) 100 Cal.App.3d 974, 978, 161 Cal.Rptr. 280 (internal quotations omitted); *See also* Cal.

17  Civ. Code, § 2787.  When a surety bond is issued, the risk of loss remains with the principal, while the

18  surety merely lends its credit so as to guarantee payment or performance in the event that the principal

19  defaults.  *Schmitt v. Ins. Co. of N. Am.* (1991) 230 Cal.App.3d 245, 257, 281 Cal.Rptr. 261. In the

20  absence of default, the surety has no obligation. *Ibid.*

21         Travelers argues it is entitled to summary judgment on its claims for: (1) statutory indemnity

22  against Highland Partnership; (2) breach of contract (Indemnity Agreement) as to all Defendants;  (3)

23  *quia timet* as to all Defendants; (4) declaratory relief as to all Defendants; and (5) specific performance

24  as to all Defendants. Travelers' first and second causes of action seek reimbursement for monies already

25

26

---

27         [6] Defendants alleged five causes of action in its Counterclaim for relief against Travelers: (1)
28  negligence; (2) breach of fiduciary duty; (3) breach of contract (as to Payment Bond and Indemnity
    Agreement); (4) breach of contract (as to Joint Defense Agreement); and (5) breach of the covenant of
    good faith and fair dealing. (Doc. No. 36.)

paid on the Bonds;[7] whereas Travelers' remaining causes of action seek collateral under the Indemnity Agreement for future claims on the Bonds, or in the alternative, declaratory relief as to Defendants' obligation to indemnify Travelers for both past and future losses.  Travelers also argues it is entitled to summary judgment on Defendants' Counterclaim, which alleges breach of the Joint Defense Agreement.[8]  The Court addresses each in turn.

## I.     Statutory Indemnity and Breach of Contract For Monies Already Expended

Defendants maintain there is a genuine dispute as to whether Travelers has successfully met its burden with respect to its breach of contract cause of action and thus summary judgment should be denied.  Specially, Defendants contend: (1) Travelers has failed to provide evidence substantiating that its attorneys' fees and costs incurred in the FAP Arbitration as well as on the Bond claims were reasonable; (2) Travelers has not established the right to recover monies already paid in settlement of Bond claims; and (3) even if Travelers could establish the above, Travelers has not performed its duties under the Indemnity Agreement.

Conversely, Travelers argues that because Defendants have not contested the validity of the Indemnity Agreement, thereby accepting their obligations under the agreement, Defendants cannot now ignore specific provisions of the Indemnity Agreement that explicitly provide for the exact relief Travelers now seeks.  To support their argument, Travelers points to Paragraph 3 of the Indemnity Agreement, whereby Defendants agreed to hold Travelers harmless against all Loss; Paragraph 1 of the Indemnity Agreement defining "Loss;" and Paragraph 4 of the Indemnity Agreement, whereby Defendants agreed Travelers had the right, in its sole discretion, to settle claims.

As a preliminary matter, the Court finds "[i]ndemnity agreements are common in construction work, and subject to public policy and established rules of contract interpretation, the parties have great

---

[7] Pursuant to California Civil Code Section 2847, "If a surety satisfies the principal obligation, or any part thereof, whether with or without legal proceedings, the principal is bound to reimburse what he has disbursed, including necessary costs and expenses; but the surety has no claim for reimbursement against other persons, though they may have been benefited by his act, except as prescribed by the next section."  The Court construes Travelers first and second causes of action as synonymous, and thus analyzes them together, taking into account Travelers cannot recover the same amounts under both.

[8] On October 2, 2012, the Court granted Travelers' motion to file the Joint Defense Agreement under seal.  (Doc. No. 106.)

1  freedom to allocate such responsibilities as they see fit."[9]  *Maxim Crane Works, L.P. v. Tilbury*

2  *Constructors* (2012) 208 Cal. App.4th 286, 291(internal quotations omitted). To demonstrate a valid

3  claim for breach of an indemnity agreement under California Law, a plaintiff must demonstrate: (1)

4  existence of an indemnity agreement; (2) performance under the indemnity agreement; (3) breach of the

5  indemnity agreement; and (4) resulting damage.  *First Nat'l Ins. Co. of Am. v. Hunt*, 2011 WL 2173765

6  *3 (E.D. Cal. 2011); *Four Star Elec., Inc. v. F & H Constr.* (1991) 7 Cal. App.4th 1375, 1379, 10 Cal.

7  Rptr.2d 1.  As the parties do not dispute the validity of the Indemnity Agreement, the Court only

8  considers whether there is a genuine dispute as to Travelers' performance under the contract and the

9  extent of Travelers' damages.  Defendants' argument with respect to damages is two-fold.  First,

10  Defendants contend there is a factual dispute over the reasonableness of Travelers' attorneys' fees and

11  costs in litigating and/or settling the Bond claims; and second, Defendants assert that Travelers has no

12  right to recover monies paid in the settlement of "questionable" claims.  The Court first addresses

13  Travelers' performance under the Indemnity Agreement and then addresses the extent of Travelers'

14  damages.

15       **A.**    **Travelers' Performance Under the Indemnity Agreement**

16       Defendants argue Travelers has not fulfilled its obligations under the Indemnity Agreement

17  because by paying out claims in bad faith, Travelers breached the covenant of good faith and fair

18  dealing implicit in every contract.[10]  Accordingly, Defendants claim Travelers cannot recover for breach

19  of the Indemnity Agreement unless Travelers establishes that its settlement and payment of claims was

20  reasonable and appropriate.  Defendants' argument is misplaced for two reasons.  First, Defendants rely

21  primarily on insurance cases rather than cases involving surety agreements; and second, the implied

22  covenant cannot be given effect if it conflicts with the explicit terms of the parties agreement.

23

24      [9] *See, e.g., Fid. & Deposit Co. of Md. v. Whitson* (1960) 187 Cal. App.2d 751, 756, 10 Cal. Rptr.

25  6 (finding indemnity agreements well accepted under California law, and California courts have long recognized the right of a surety to be indemnified under the terms of a written indemnity agreement);

26  Cal. Civ. Code, § 2772 ("Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person.").

27      [10]  Defendants maintain this argument is different than Defendants' original cause of action for

28  breach of the covenant of good faith and fair dealing, which was dismissed as an independent claim in Defendants' Counterclaim. (Doc. No. 73.)  Although the Court finds these arguments strikingly similar, the Court nonetheless addresses Defendants' arguments for purposes of completeness.

### 1.    Inapplicability of Insurance Law to Surety Agreements

Defendants rely primarily on *Security Officers Service, Inc. v. State Compensation Insurance Fund (Security Officers)* for the proposition that "the insurer's discretion in handling claims is restricted where its exercise may impair the insured's interests under the policy." 17 Cal. App. 4th 887, 896 (1993).[11]  In *Security Officers*, the defendant was a public workers' compensation insurance enterprise that issued a policy to the plaintiff agreeing to promptly pay benefits when due, and to defend any claim or proceeding against the plaintiff.  *Id.* at 890.  Although it was already well established that the implied covenant of good faith and fair dealing imposed limits on the insurer's latitude in discharging its contractual right or duty to defend, and investigate or settle claims, it was unclear whether an insurer had the freedom to accept or reject settlement offers, and whether an insurer could leave claims unresolved and outstanding.  *Id.* at 889-90.  The Court of Appeal settled this ambiguity by holding that although the insurers actions did not violate the express terms of the contract, where the insurers conduct effects the insured's premiums, the policy's implied covenant of good faith and fair dealing requires the insurer to defend, investigate, reserve, and settle claims with good faith.  *Id.* at 899.  Accordingly, Defendants argue that just as the reserves set by insurers under policies with retrospective premium features increase the insured's financial obligations, Travelers' negligent or reckless settlement of invalid claims increases Defendants' financial obligations.

Although Defendants make a valiant effort to analogize the obligations of a surety to that of an insurer, California courts have consistently held that insurance contracts and surety agreements are inherently different and therefore require a different analysis. *See Cates Constr., Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 47 ("It is firmly established that the insurance policy cases represent a major departure from traditional principles of contract law.").  This is based primarily on the fact that where a "liability insurance policy is written for the [financial] protection of the insured . . . a [surety agreement]

---

[11]  Defendants also rely on *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566,573-574; *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.* (1992) 2 Cal. 4th 342, 372; *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809,818; *Notrica v. State Compo Ins. Fund* (1999) 70 Cal. App. 4th 911,923-25; *Nat'l Sur. Corp. v. Fast Motor Serv.* (Ill. App. 1991) 572 N.E. 2d 1083, 1087, all of which analyze the implied covenant of good faith and fair dealing in the context of insurance contracts.  Defendants citation to *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, which involved a surety, is on point, but is discussed below with regard to the covenant of good faith and fair dealing. (recognizing a "surety bond is not an insurance policy").

1   does not protect the principal by insuring him against liability," it is merely written for the "protection

2   of the motoring public, who may be injured by the principal"[12]  *Id.* at 53–55 (stating that while an

3   insurer stands as a fiduciary to the insured, this relationship is not present in surety relations, even when

4   the parties have disparate bargaining power); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins*. Co.

5   (1996) 47 Cal. App. 4th 464, 483, 54 Cal. Rptr. 2d 888 (finding that a surety is not required to give a

6   heightened degree of consideration to the interests of the indemnitor).  Therefore, because surety

7   bonding does not give rise to a fiduciary-like special relationship found in traditional two-party

8   insurance contracts, the Court finds Defendants' arguments and cases cited in support thereof

9   unavailing.

10         **2.**        **Implied Covenant of Good Faith and Fair Dealing Applied to Surety Agreements**

11         Nevertheless, the implied covenant of good faith and fair dealing applies to surety contracts,

12   albeit in the same fashion the covenant applies to ordinary contracts outside of the insurance arena. *See,*

13   *e.g., Schmitt,* 230 Cal. App.3d at 256 (stating that the trial court erred by applying ordinary "bad faith"

14   law found in cases dealing with insurance contracts to the surety relationship); *Arntz,* 47 Cal. App.4th at

15   483, 54 Cal. Rptr. 2d 888 (stating the correct standard in an implied covenant of good faith case is "not

16   the insurer/insured good faith standard, but the standard of good faith and fair conduct implied in every

17   contract").

18         "A breach of the implied covenant of good faith and fair dealing involves something beyond

19   breach of the contractual duty itself . . . and implies unfair dealing rather than mistaken judgment."

20   *Careau & Co. v. Sec. Pac. Bus. Credit, Inc*. (1990) 222 Cal. App. 3d 1371, 1394.  The covenant of good

21   faith finds particular application in situations where one party is invested with a discretionary power

22   affecting the rights of another. *Carma Dev., Inc. v. Marathon Dev. Cal., Inc.* (1992) 2 Cal.4th 342, 372.

23   However, "what that duty [of good faith] embraces is dependent upon the nature of the bargain struck

24   between [the parties] and the legitimate expectations of the parties which arise from the contract."

25   *Gerdlund v. Elec. Dispensers Int'l* (1987) 190 Cal. App. 3d 263, 277-78, 235 Cal. Rptr. 279. *See also*

26   *Pasadena Live, LLC v. City of Pasadena* (2004) 114 Cal. App. 4th 1089, 1093-94 (finding the implied

27

28         [12] The *Schmitt* court stated "[i]f the surety is compelled to make payment for damages caused by the principal, it has the right to seek reimbursement from the principal." *Schmitt v. Ins. Co. of N. Am.* (1991) 230 Cal.App.3d 245, 257, 281 Cal.Rptr. 261.

1   covenant of good faith and fair dealing is "limited to assuring compliance with the express terms of the

2   contract, and cannot be extended to create obligations not contemplated by the contract").  Accordingly,

3   "the implied covenant will only be recognized to further the contract's purpose; it will not be read into a

4   contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf*

5   *v. Walt Disney Pictures & Television* (2008) 162 Cal. App. 4th 1107, 1120

6        Defendants cite to *Arntz Contracting Company v. St. Paul Fire & Marine Insurance Company*

7   for the proposition that "[a] surety is not entitled to indemnification for amounts paid in settlement of

8   claims upon its bonds if the settlement is not made in good faith." 47 Cal. App.4th 464, 486, 54 Cal.

9   Rptr. 2d 888 (1996).  However, Defendants' reliance on *Arntz* is misguided as it is inapposite to the

10  current factual scenario.  In *Arntz*, the court was considering whether a surety could be indemnified for

11  settlement costs attributed to claims alleging the surety's deliberate and willful misfeasance in managing

12  the project, not the surety's payment of settlement claims and bonds on behalf of the indemnitor as

13  stated under the indemnity agreement. Thus, when the *Arntz* court mentioned settlements "not made in

14  good faith," the court was referring to settlements involving the surety's own wrongdoing—not

15  settlements between the two contracting parties.

16        Conversely, Travelers argues, and the Court agrees, that where a breach of the implied covenant

17  relates only to a contract provision, it is error to apply the covenant at variance with the provision.

18  *Gerdlund*, 190 Cal. App. 3d at 277.  This is based on the principle that "[t]he covenant of good faith is

19  read into contracts in order to protect the express covenants or promises of the contract, not to protect

20  some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive*

21  *Data Corp*. (1988) 47 Cal.3d 654, 683, 254 Cal. Rptr. 211, 765 P.2d 373.  Travelers points to Paragraph

22  4 of the Indemnity Agreement to support its contention.

23        4. Claim Settlement:  Company shall have the right, **in its sole discretion**, to
         determine for itself and Indemnitors whether any claim, demand or suit
24       brought against Company or any Indemnitor in connection with or relating to
         any Bond shall be paid, compromised, settled, tried, defended or appealed,
25       and **its determination shall be final, binding and conclusive upon the
         Indemnitors**. Company **shall be entitled to immediate reimbursement for
26       any and all Loss** incurred under the belief it was **necessary or expedient** to
         make such payments (emphasis added).

27  Pursuant to this paragraph, Travelers argues it was given the authority to settle claims against it

28  in its sole discretion, and any determination made by Travelers was to be binding and conclusive upon

Defendants.  The only precautionary language in the paragraph states that Travelers should be indemnified for all loss it believed was "necessary or expedient."  However, even this precautionary language allows Travelers to settle claims it deemed necessary *or* expedient, not both.[13]  *See AIU Ins. Co. v. Super. Ct.* (1990) 51 Cal.3d 807, 821, 274 Cal. Rptr. 820, 799 P.2d 1253 ("[T]he mutual intention of the parties at the time the contract is formed governs interpretation.").  Thus, because all parties to the Indemnity Agreement are sophisticated business people, and the Court will not rewrite the parties contract after the fact to facilitate a different result, the Court finds the implied covenant conflicts with the parties explicit agreement.  *See, e.g., Certain Underwriters at Lloyd's of London v. Super. Ct.* (2001) 24 Cal.4th 945, 968, 103 Cal. Rptr. 2d 672, 16 P.3d 94 ("[W]e do not rewrite any provision of any contract, for any purpose.").  Accordingly, the Court finds Travelers fulfilled its obligations under the Indemnity Agreement.

### B.     Travelers' Right to Recover Monies for Claims Already Paid

Travelers seeks to recover $3,592,854 for losses and expenses it has incurred in connection with the Bonds issued on Defendants' behalf.  Of this amount, $1,549,187 represents amounts already paid to settle claims.[14]  Travelers cites to the following portions of the Indemnity Agreement to support its right to recover monies in the above amount:

> 3. Indemnification and Hold Harmless: Indemnitors shall exonerate, indemnify and save the Company harmless from and against all Loss. **An itemized, sworn statement by an employee of the Company**, or other evidence of payment, **shall be prima facie evidence of the propriety,**

---

[13]  Travelers has presented substantial evidence to support the settlement and payment of claims against the Bonds.  (Doc. No. 87, Exs. C-P.)

[14]  To date Travelers has paid out 15 claims, including Alcala Company $75,000, (Brown Decl., Ex. C, p. 39; Ex. T, p. 91); Casper Company $80,000 (Brown Decl., Ex. E, p. 41; Ex. T, p. 92); California Comfort System $200,000 (Brown Decl., Ex. H, p. 54; Ex. T, p. 93); Cecilia's Safety (Brown Decl., Ex. L, p. 77; Ex. T, p. 94); Diversified Window Coverings $26,000 (Brown Decl., Ex. J, p. 61; Ex. T, p. 95); Howard's Rug of San Diego $55,000 (Brown Decl., Ex. M, p. 78; Ex. T, p. 96); Whillock Contracting $30,000 (Brown Decl., Ex. F, p. 42; Ex. T, p. 97); Otis Elevator $100,000 (Brown Decl., Ex. T, p. 98); San Diego Steel Holdings Group $204,389 (Brown Decl., Ex. O, p. 80; Ex. T, p. 99); Wirtz Tile & Stone $112,000 (Brown Decl., Ex. N, p. 79; Ex. T, p. 100); Quality Cabinets $237,007 (Brown Decl., Ex. G, p. 43; Ex. T, p. 101); Harris Cabinets $250,000 (Brown Decl., Ex. K, p. 64; Ex. T, p. 102-04); Brewer Crane $15,000 (Brown Decl., Ex. D, p. 40; Ex. T, p. 105); Gabbard Hardware $65,000 (Brown Decl., Ex. I, p. 60; Ex. T, p. 106); and Southwest Carpenters Trust $39,250 (Brown Decl., Ex. P, p. 81; Ex. T, p. 107).  The remaining amounts Travelers seeks to recover includes attorneys' fees and expenses incurred in litigation and settlement of the Bond claims.  This amount is discussed in Section IC.

10cv2503 AJB (DHB)

**amount and existence of Indemnitors' liability**. Amounts due to Company shall be payable upon demand (emphasis added).

1. Definitions.          Loss: **All loss and expense of any kind or nature, including attorneys' and other professional fees,** which Company incurs **in connection with any Bond or this Agreement,** including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond, (b) prosecuting or defending any action in connection with any Bond, (c) obtaining the release of any Bond, (d) recovering or attempting to recover Property in connection with any Bond or this Agreement, (e) enforcing by litigation or otherwise any of the provisions of this Agreement, and (f) all interest thereon at the maximum legal rate (emphasis added).[15]

Conversely, Defendants assert Travelers' motion should be denied because it paid unreasonable and unnecessary claims, and paid claims voluntarily. In doing so however, Defendants do not explicitly contest ten of the fifteen payments Travelers has already expended in settlement on Bond claims.[16] Therefore, pursuant to Paragraph 3, because Travelers has presented an itemized statement of loss and expenses incurred by Travelers, sworn to by an employee of Travelers, and has attached copies of the payments disbursed, the Court finds, at a minimum, that Travelers should be granted summary judgment with respect to claims uncontested by Defendants. *See Fidelity & Deposit Co. of Md. v. Whitson* (1960) 187 Cal. App. 2d 751, 757 (finding "there is authority supporting the validity of provisions that vouchers or other evidence of payment shall be conclusive evidence thereof upon a showing that payment was made in good faith");[17] 17 C.J.S., Contracts, pp. 607, 608, n. 89 (stating that such provisions in an indemnity contract have the sanction of decisional law); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) ("A lawyer drafting an opposition to a summary judgment

---

[15] Numerous courts in other jurisdictions have upheld similar loss provisions. *See, e.g., Transamerica Ins. Co. v. Bloomfield*, 401 F.2d 357, 362 (6th Cir. 1968) (Paragraph VI granted to the Company "the right to pay, settle or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof and of the Indemnitor's liability therefor to the Company").

[16] Defendants' opposition only explicitly disputes five payments made by Travelers: Harris Concrete, San Diego Steel, Cecilia's Safety Service, Carpenters Southwest Administrative Corporation, and Raymond San Diego. (Doc. No. 104, p. 14-15.) *See* Fed.R.Civ.P. 56(c)(3), ("The court need consider only the cited materials, but it may consider other materials in the record.").

[17] The loss provision clause that was upheld in *Whitson* was almost identical to the Indemnity Agreement in the instant case. 187 Cal. App. 2d at 756 (" . . . in the event of any claim or demand made upon plaintiff by reason of the bonds referred to, or any of them, plaintiff shall be at liberty to pay or compromise the same, and the voucher or other evidence of payment, compromise or settlement of any claim, demand, liability, cost, charge, expense, suit or judgment by reason of said bonds *shall be prima facie evidence* of the fact and of the extent of the defendant's liability as indemnitor under the contract of indemnity to the plaintiff."). (emphasis added).

motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence.").  Accordingly, Defendants shall reimburse Travelers $942,548.00 for monies already expended by Travelers on uncontested Bond settlements.[18]

On the other hand, Defendants explicitly contest five claims already paid by Travelers, including: Cecilia's Safety $58,000; San Diego Steel Holdings Group $204,389; Harris Concrete $250,000; Howard's Rug of San Diego $55,000; and Southwest Carpenters Trust $39,250.  Defendants allege Travelers' overpayment of these questionable claims, and the failure to meet its burden of proof substantiating these claims, creates a genuine dispute as to the extent of Travelers' damages and requires resolution at trial.  In rebuttal, Travelers points to the Indemnity Agreement, stating that under Paragraph Three, a sworn itemized statement by Marc Brown, Managing Director and Counsel for Travelers, is prima facie evidence of its losses.  Accordingly, Travelers argues the burden shifts to Defendants to challenge these losses.  The Court agrees and finds Defendants have failed to meet this burden.  *See Peter Culley & Assoc. v. Super. Ct.* (1992) 10 Cal. App. 4th 1484, 1497, 13 Cal. Rptr. 2d 624, 632-33 ("[S]ettlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable (e.g., unreasonable in amount, entered collusively or in bad faith, or entered by an indemnitee not reasonable in the belief that he or she had an interest to protect).").

Surety indemnity agreements like the one before this Court have been repeatedly upheld and enforced in California and elsewhere as giving rise to a presumption of the reasonableness of the loss and expense incurred by the surety in resolving claims, and consequently the surety's good faith in doing so. *See, e.g., Gen. Ins. Co. of Am. v. Singleton* (1974) 40 Cal. App.3d at 444, 115 Cal. Rptr. 291; *Fallon Elec. Co., Inc. v. The Cincinnati Ins. Co.*, 121 F.3d 125, 128 (3d Cir. 1997) (holding that indemnity agreement provisions shift the burden to indemnitors to prove bad faith). Consequently, any alleged bad faith on behalf of a surety is a defense to liability that must be pleaded and proved by the

---

[18]  This amount includes payment to Alcala Company $75,000; Casper Company $80,000; California Comfort Systems $200,000; Diversified Window Coverings $26,000; Whillock Contracting $30,000; Otis Elevator $100,000; Wirtz Tile & Stone $112,000; Quality Cabinets $237,007; Brewer Crane $15,000; and Gabbard Hardware $65,000. (Doc. No. 87, Brown Decl. ¶ 18.)

defendants as opposed to constituting an element of a surety's case for breach of contract.  *Id*.; *See also Admin. Mgmt. Servs. Inc. v. Fidelity and Deposit Co. of Md.* (1982) 129 Cal. App.3d 484, 181 Cal. Rptr. 141 (finding sureties breach of implied covenant of good faith and fair dealing is an affirmative defense that must be pleaded and proved by defendants); *Travelers Cas. and Surety Co. of Am. v. Dunmore*, No. 08-2493, 2009 WL 1586936 *6 (E.D. Cal. June 5, 2009) (same).

   To successfully establish a bad faith defense, an indemnitee, such as Defendants, must prove that the surety engaged in "objectively unreasonable conduct" in handling its obligations under the indemnity agreement.  *See Arntz*, 47 Cal. App.4th at 483, 54 Cal. Rptr.2d 888 (1996); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373 (1992) (stating the "the covenant of good faith can be breached by objectively unreasonable conduct, regardless of the actor's motive").  Good faith does not require perfection, or require that the surety had complete knowledge of the circumstances behind the claim before making its settlement decision.  *Seaboard Sur. Co. v. Dale Const. Co.*, 230 F.2d 625, 629 (1st Cir. 1956).  Thus, whether the surety engaged in "objectively unreasonable conduct" is based on whether the surety believed in good faith that it was *either* necessary or desirable for it to act to protect its interests as a surety, *or* whether there was no rational justification for the sureties actions.  *Id*; *Weinreich Estate Co. v. A.J. Johnston Co.* (1915) 28 Cal. App. 144, 149, 151 P. 667, 670 (stating the general rule that sureties are entitled to stand upon the precise terms of their contract).  Defendants bear the burden of offering evidence of Travelers' bad faith.  *See Horton v. Potter*, 369 F.3d 906, 911-912 (6th Cir. 2004) (stating that failure to plead an affirmative right with specificity waives the right to assert the defense).

   Here, Travelers submitted a declaration of Marc Brown that included a list of all payments made by Travelers to subcontractors and suppliers who provided labor and materials on the Project.  (Brown Decl. ¶ 18.)  Brown's declaration also included copies of checks and settlement agreements pertaining to the payments, (Brown Decl., Ex. T), and a computer printout detailing each payment, (Brown Decl., Ex. S).  Accordingly, the Court finds Travelers has satisfied its obligations under the Indemnity Agreement and the burden shifts to Defendants to provide proof to the contrary.  *See Fidelity & Deposit Co. of Md.*,187 Cal. App. 2d at 757-58 (holding that "where there is no trial and no judgment establishing

1  liability, but a settlement of the litigation has been made, the settlement becomes presumptive evidence

2  of the liability and the amount thereof, which presumption is subject to being overcome by proof.")

3        Defendants however have not presented sufficient evidence to rebut this presumption with

4  respect to any of the five contested Bond claims already settled and paid by Travelers.  Instead,

5  Defendants rely on legal conclusions and factual allegations set forth in John David Gardner's

6  declaration, all of which are unsupported by the record. *See Hansen v. United States*, 7 F.3d 137, 138

7  (9th Cir.1993); *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 492 n. 3 (9th Cir.1990).  For

8  example, with respect to the Harris Concrete claim, Mr. Gardner states that as an experienced general

9  contractor on the Project, he knew that the Harris claim was unsupported and that Harris had been paid

10  in full for the value of its work. (Gardner Decl. ¶ 19.)  Gardner further states that these concerns and

11  objections were voiced to Travelers in a letter Highland's counsel sent to Travelers objecting to the

12  Harris settlement.[19]  (*Id.*; Doc. No. 104, Ex. D.)  Although Defendants have attached the letter for the

13  Court to review, Defendants neither attached proof of their allegations with the letter originally sent to

14  Travelers, nor did Defendants present the Court with proof to support their allegations in their

15  opposition to the current motion. Thus, the Court finds Defendants have failed to substantiate their

16  allegations that Travelers voluntarily paid the Harris claim even though there was no basis for

17  Defendants' liability.  *See Peter Culley & Assoc.*,10 Cal. App. 4th at 1492 ("[O]ne acting in good faith

18  in making payment under a reasonable belief that it is necessary to his [her] protection is entitled to

19  indemnity or subrogation, even though it develops that he [she] in fact had no interest to protect.")

20  (internal citations omitted).[20]

21

22      [19] The letter Defendants' Counsel sent to Travelers listed five primary reasons Defendants
objected to the settlement with Harris: (1) Defendants had additional claims against Harris that "would

23  likely" offset any recovery by Harris; (2) San Diego Steel was responsible for Harris' damages and had
a responsibility to indemnify and hold Defendants harmless in connection with claims pursued by

24  Harris; (3) Harris was in "severe financial distress" and lacked the resources to continue to arbitrate the
dispute; (4) Harris provided false information to the unions regarding work performed on the project;

25  and (5) Harris refused Defendants' demands that part of the settlement proceeds be used to pay a claim
of the Carpenters Trust.

26

27      [20] *See* Fed. R. Civ. Proc. 56(e) ("If a party fails to properly support an assertion of fact or fails to
properly address another party's assertion of fact as required by Rule 56(c), the court may (1) give an

28  opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the
motion; (3) grant summary judgment if the motion and supporting materials—including facts considered
undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.").

1    Defendants' allegations with respect to claims paid to San Diego Steel, Howard's Rug, Cecilia's

2  Safety, and Carpenter's Southwest are similarly deficient.  First, with respect to the San Diego Steel

3  claim, Gardner states it was not worth the $204,369 Travelers paid to settle the claim because the work

4  was deficient, delayed, and San Diego Steel was obligated to indemnify Defendants. (Gardner Decl. ¶

5  21.)  Defendants however fail to provide any support for these blanket assertions, nor do they attach a

6  contract or other proof of Defendants' right to indemnification from San Diego Steel.  Second, with

7  respect to the Howard's Rug claim, Gardner states Howard's Rug was only owed $1,917, instead of the

8  $55,000 Travelers paid on the claim, because Howard's had already been paid by FAP. (*Id*. at ¶ 23.)

9  Again, Defendants fail to provide proof substantiating this allegation, and nevertheless, Gardner was not

10  a party to the FAP-Howard's Rug Agreement—and therefor lacks personal knowledge as to its

11  specifics—and Defendants failed to produce the agreement for the Court to review.  Finally, with

12  respect to claims settled with Cecilia's Safety Service, Inc. and Carpenters Southwest, Gardner states

13  these claims should not have been paid by Travelers because there is no evidence that either entity has a

14  claim on any Travelers' Bond.  (*Id*. at ¶¶ 22, 24.)  The Court finds these allegations disingenuous,

15  however, because the suit filed by Cecilia's Safety Service was listed on Brown's declaration attached to

16  Travelers' instant motion, and the Carpenter's Southwest suit is listed in the Joint Defense Agreement as

17  a suit the parties agreed to jointly defend.  Accordingly, the Court finds Defendants have failed to

18  present proof that Travelers engaged in "objectively unreasonable" conduct in settling the disputed

19  claims and **GRANTS** Travelers' motion for recovery of monies already expended in settlement of such

20  Bond claims.  Therefore, Defendants shall reimburse Travelers $1,549,187.00 for monies expended in

21  settlement of claims made on Defendants' Bonds.[21]

22       **C.    Travelers' Right to Recover Attorneys' Fees and Costs Under the Indemnity
              Agreement**

23           In addition to monies paid on Bond claims, Travelers seeks $2,043,667 in attorneys' fees and

24  other expenses incurred during the FAP Arbitration, and in the settlement and negotiation of Bond

25

26

27

28       [21] This amount includes the $942,548.00 for payment of Bond claims Defendants did not contest,
and $606,339.00 for payment of Bond claims contested by Defendants.  *See* Brown Decl. ¶ 18.

claims.[22]  Travelers argues that pursuant to the Indemnity Agreement, Defendants are jointly and

severally obligated to reimburse Travelers for any and all losses incurred as a result of having issued

Bonds on behalf of Defendants.  Travelers argues a "judgment in an amount less than *all* of these fees

and costs would not give Travelers the benefit it bargained for in the Indemnity Agreement." (Doc. No.

105, p. 6:18-19) (emphasis added).  Travelers cites to the following portions of the Indemnity

Agreement to support this contention:

> 4. Claim Settlement: Company shall have the right, in its sole discretion, to
> determine for itself and Indemnitors whether any claim, demand or suit
> brought against Company or any Indemnitor in connection with or relating to
> any Bond shall be paid, compromised, settled, tried, defended or appealed,
> and its determination shall be final, binding and conclusive upon the
> Indemnitors. **Company shall be entitled to immediate reimbursement for
> any and all Loss incurred under the belief it was necessary or expedient
> to make such payments** (emphasis added).

> 1. Definitions.           Loss: **All loss and expense of any kind or nature,
> including attorneys' and other professional fees,** which Company incurs **in
> connection with any Bond or this Agreement,** including but not limited to
> all loss and expense incurred by reason of Company's: (a) making any
> investigation in connection with any Bond, (b) prosecuting or defending any
> action in connection with any Bond, (c) obtaining the release of any Bond, (d)
> recovering or attempting to recover Property in connection with any Bond or
> this Agreement, (e) enforcing by litigation or otherwise any of the provisions
> of this Agreement, and (f) all interest thereon at the maximum legal rate
> (emphasis added).

In response, Defendants argue that even if the Indemnity Agreement is a valid and enforceable contract,

Travelers has failed to provide evidence substantiating that its attorneys' fees and costs were reasonable,

thereby precluding summary judgment.[23]  The Court is inclined to agree, because  the Indemnity

---

[22] The $2,043,667.01 spent by Travelers in settlement of these claims is allocated accordingly: $1,736,959.37 to Watt Tieder Hoffar & Fitzgerald, LLP (law firm retained by Travelers to represent and defend its interests on all matters related to the Projects and Bonds); $31,727.38 to Sage Associates, Inc (consultant hired by Travelers to assist in its investigation of claims asserted by FAP and certain subcontractors); $70,135.18 to Alta Cascade (firm retained by Travelers to provide expert opinions as to scheduling issues for the FAP arbitration); $168,033.19 to the American Arbitration Association (fees associated with the FAP arbitration); $22,641.06 for Travelers employee travel costs to fly from Federal way, Washington to San Diego, California to participate in arbitration proceedings and subcontractor lawsuit proceeding; and $14,170.83 for mediation and miscellaneous services.

[23] Defendants cite *McGranahan Insurance Corp. of NY*, 544 F.Supp.2d 1052, 1062 fn.15 (E.D. Cal. 2008), for the proposition that where there is a genuine issue as to the amount of damages, such a dispute must be resolved at trial.  (Doc. No. 104, p. 20).  In *McGranaham*, the plaintiff bankruptcy trustee and defendant insurer, both moved for summary judgement.  The Court denied defendant insurer's motion for summary judgment regarding the plaintiff's claim for breach of the duty to defend, and granted plaintiff's motion for summary judgment.  The referenced footnote, which immediately

1   Agreement did not give Travelers a blank check to recover attorneys' fees and expenses beyond those

2   deemed reasonable, and Travelers has not met its burden in this respect, or even attempted to meet its

3   burden.[24]

4         Even where a surety is entitled to attorneys' fees, the court may limit the recoverable fees to only

5   those fees incurred in the protection of the surety's interests, and only fees that were reasonable and

6   incurred in good faith as a result of or in issuance of the bonds.  74 Am. Jur. 2d Suretyship § 138;[25]

7   *Safeco Ins. Co. of Am. v. Chiang*, 2007 WL 460842 *3 (N.D. Cal. 2007) ("Having found that Defendants

8   breached the Indemnity Agreement, the Court finds as a matter of law that Defendants are jointly and

9   severally liable to Plaintiff for *reasonable attorneys fees* incurred in Plaintiff's prosecution of this

10  action.") (emphasis added).  To determine a reasonable amount of attorneys' fees, the court should

11  "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and

12  multiplying it by the reasonable hourly rate."  *Fisher v. SJB-P.D. Inc*., 214 F.3d 1115, 119 (9th Cir.

13  2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  To determine a reasonable number of

14  hours, "counsel bears the burden of submitting detailed time records justifying the hours claimed to have

15  been expended. [citation] Those hours may be reduced by the court where documentation of the hours is

16  inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed

17  excessive or otherwise unnecessary." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986).  To

18  determine a reasonable rate for each attorney, the court must look to the rate prevailing in the

19

20

21  follows the court's ruling on summary judgment, found that plaintiff trustee was entitled to relief, even
    though the extent of relief was to be determined later.

22

23  [24] Travelers contends it is not required to show that its fees and costs were reasonable because
    this would conflict with the parties Indemnity Agreement and the law.  To support this argument

24  Travelers cites to *Pike Creek Chiropractoc Ctr., P.A. v. Robinson*, 637 A.2d 418, 423 (Del. 1994).  *Pike*
    however, states that "regardless of whether indemnity if based upon an implied or express agreement. . .

25  the indemnitor is liable for any *reasonable* expenses. . ." (emphasis added).  The language cited to by
    Travelers is out of context and refers only to the surety's ability to recover fees in enforcing the
    indemnity agreement.  *Id.*

26

27  [25] This is line with case law from countless jurisdictions.  *See, e.g., Ulico Cas. Co. v. Atlantic
    Contracting & Material Co., Inc*., 150 Md. App. 676, 822 A.2d 1257 (2003); *Perkins v. Thompson*, 551

28  So. 2d 204 (Miss. 1989); *Harvey v. United Pacific Ins. Co.*, 109 Nev. 621, 856 P.2d 240 (1993); *Utica
    Mut. Ins. Co. v. Magwood Enter., Inc*., 15 A.D.3d 471, 790 N.Y.S.2d 179 (2005); *Jackson v. Hollowell*,
    685 F.2d 961 (5th Cir. 1982).

community for similar work performed by attorneys of comparable skill, experience, and reputation.  *Id.*
at 1210-11.

Accordingly, because Defendants have disputed the reasonableness of Travelers' attorneys fees'
and costs, and Travelers has not presented the court with sufficient evidence to make a determination of
whether the fees and costs incurred were reasonable in light of Ninth Circuit precedent—nor has
Travelers asserted that they must do so—the Court **DENIES** Travelers' motion with respect to recovery
of $2,043,667 in attorneys' fees and costs.[26]  However, in contrast to Defendants' assertion, denial of
Travelers' motion for attorneys' fees and costs does not preclude granting summary judgment on
Travelers' breach of contract cause of action.[27]

## II.   Travelers' Right to Enforce the Collateral Security Provision Under the Indemnity Agreement

In addition to seeking reimbursement on claims already paid on the Bonds, Travelers seeks
specific performance of the collateral security provision in the Indemnity Agreement.[28]  Specifically,
Travelers seeks $2,000,000, which represents the estimated exposure related to outstanding subcontract
suits.  This amount includes pending suits by Dynalectric Company ("Dynalectric"), which claims
$1,432,848 is due from Travelers; Allied West Company ("Allied"), which claims $39,650 is due from
Travelers; Raymond San Diego, Inc. ("Raymond"), which claims $237,647 is due from Travelers; and

---

[26] Travelers cites to *Kansas Turnpike Authority v. Morgan Guaranty Trust Company of New York*, 751 F.Supp. 936, 941 (D. Kan. 1990), which found that Kansas law does not recognize the "implied covenant of good faith and fair dealing" and thus attorneys' fees provisions in indemnity agreements do not have to be interpreted with regard to reasonableness if language is not explicit.  Because California law does recognize the implied covenant of good faith and fair dealing, the Court finds *Kansas Turnpike* inapposite.

[27] *See Michael Taylor Design, Inc. v. Travelers Prop. Cas. Co. of Am.*, 761 F.Supp.2d 904, 914 (N.D. Cal. 2011) ("To the extent [Plaintiff] is requesting a determination that Travelers must pay the amounts actually invoiced, its motion is denied, because it has not even attempted to establish the absence of any triable issue of fact as to the reasonableness of the fees.").

[28] Travelers' specific performance claim is duplicative of its *quia timet* claim.  *Quia timet* (literally "because he fears") gives a court the equitable power, at the request of a surety, to seize funds owed and apply them to a debt if the surety can show that "the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid[,] the surety will become liable."  *Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir.1954).  Thus, to the extent Travelers is entitled to the collateral security it is seeking, summary judgment on this count is also granted.  However, *quia timet* is not an independent ground for recovery and Travelers cannot obtain the same security twice.

Angus Asphalt, Inc. ("Angus"), which claims $28,511 is due from Travelers.[29]  Travelers relies on the following provision in the Indemnity Agreement to support its claim:

> 5. Collateral Security: Indemnitor agrees to deposit with Company, **upon demand**, **an amount as determined by Company sufficient to discharge any Loss or anticipated Loss** . . . Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond . . . Indemnitors agree that company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph. (emphasis added).

> 1. Definitions.        Loss: **All loss and expense of any kind or nature, including attorneys' and other professional fees,** which Company incurs **in connection with any Bond or this Agreement,** including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond, (b) prosecuting or defending any action in connection with any Bond, (c) obtaining the release of any Bond, (d) recovering or attempting to recover Property in connection with any Bond or this Agreement, (e) enforcing by litigation or otherwise any of the provisions of this Agreement, and (f) all interest thereon at the maximum legal rate (emphasis added).

Defendants do not contest the validity of the collateral security provision, yet claims Travelers' motion should be denied because it is speculative, grossly overstated, and factually inaccurate.

"Specific performance of a contract may be decreed whenever: (1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate." *Blackburn v. Charnley* (2004) 117 Cal. App.4th 758, 766, 11 Cal .Rptr.3d 885.  A plaintiff's legal remedy is inadequate if a defendant's liability under a contract is uncertain, such that a breach of contract claim cannot yet be maintained.  *Cf. Comm. Ins. Co. of Newark, N.J. v. Pacific-Peru Constr. Corp.*, 558 F.2d 948, 954-55 (9th Cir. 1977) (reversing the district court's specific enforcement of a collateral security provision where there was nothing uncertain about Defendant's liability and the amount and interest could be determined by simple mathematical calculations).

With regard to surety agreements, a court can grant specific performance of a collateral security provision where a claim on a bond has been made, but there has not yet been actual monetary loss.  *See*

---

[29] All of the pending claims against Travelers equates to $1,738,656.  However, Travelers alleges it has been, and continues to be, required to investigate claims, adjust claims, and defend itself against claims on Bonds. (Brown Decl. ¶ 14.)  Thus, Travelers based its estimate on fees and costs that will be expended in litigation and settlement of these claims.  (*Id.*)

1   *e.g., Milwaukie Constr. Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 968 (9th Cir. 1966) (affirming award

2   of collateral security to surety); *Gen. Ins. Co. of Am. v. Singleton*, 40 Cal. App.3d 439, 442, 115 Cal.

3   Rptr. 291 (1974) (awarding collateral security under a bond agreement).  In fact, "[s]ureties are ordinarily

4   entitled to specific performance of collateral security clauses" because "[i]f a creditor is to have the

5   security position for which he bargained, the promise to maintain the security must be specifically

6   enforced."  *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir.1984) (internal citation

7   omitted).  *See also Marine Midland Trust Co. v. Alleghany Corp.*, 28 F.Supp. 680, 683-84 (S.D.N.Y.

8   1939); accord *Milwaukie*, 367 F.2d at 964 ("If a creditor is to have the security position for which he

9   bargained, the promise to maintain the security must be specifically enforced.").  Specific performance is

10  commonly granted on summary judgment.  *See Travelers Cas. & Sur. Co. of Am. v. Desert Gold*

11  *Ventures, LLC*, 2010 WL 5017798 *6 (C.D. Cal. 2010 Nov. 19, 2010).

12        Although Travelers' full liability on the bonds has not yet been determined, the fact that Travelers

13  may be liable for the full amounts claimed under pending subcontractor suits is sufficient to entitle

14  Travelers to the specific performance it seeks.  *See Amer. Motorists Ins. Co. v. United Furnace Co.*, 876

15  F.2d 293, 299, 302 (2d Cir.1989) ("Having bargained for collateral security and having failed to receive

16  it," plaintiff's claim for specific performance was ripe, even though the surety's indemnity liability for

17  the full amount of the bond was "speculative").  Paragraph Five of the Indemnity Agreement is

18  sufficiently clear and definite that "upon demand, an amount as determined by [Travelers] sufficient to

19  discharge any Loss or anticipated Loss" shall be deposited with Travelers.  As outlined in Mr. Brown's

20  declaration, Travelers faces lawsuits on the Bond claims from Dynalectric ($1,432,848), Raymond

21  ($237,647), Allied ($39,650), and Angus ($28,511).[30]  Accordingly, because the above stated suits are

22

23
_____

24  [30] This is further supported by documents attached to Defendants' Opposition—documents
    Defendants requested the Court take judicial notice of—including, the Petition for Bankruptcy of FAP
25  (Def.s' RJN, Ex. 1), the First Amended Complaint in the matter of *Allied West Construction v. TWD*,
    LLC (Def.s' RJN, Ex. 3), a Register of Actions printout in the matter of *Angus Asphalt, Inc. v. 5th*
26  *Avenue Partners* (Def.s' RJN, Ex. 4), and proof of claim forms filed by Angus and Raymond in the FAP
    bankruptcy proceeding, (Def.s' RJN, Exs. 5, 6 ).  Under Federal Rule of Evidence 201(b), a court may
27  take judicial notice of facts that are "(1) generally known within the trial court's territorial jurisdiction;
    or (2) whose accuracy cannot be easily questioned."  This includes matters of public record and court
28  documents. *See Chaker v. Crogan*, 428 F.3d 1215, 1223 (9th Cir. 2005).  Thus, the Court grants
    Defendants' request with respect to Exhibits 1,3, 4, 5, 6; and denies the Defendants' request with respect
    to Exhibit 2 as unnecessary to the Court's ruling on the present motion.

1  still pending, and a judgment has not been fixed, the Court finds Travelers' legal remedy is currently

2  inadequate.[31]

3       Although Defendants cannot contest that Dynalectric, Allied, Angus, and Raymond have made

4  claims on the Bonds, Defendants argue the claims are either speculative, and present a genuine dispute

5  precluding summary judgment, or are no longer outstanding, and thus should not be included in the

6  amount of collateral Travelers seeks.  Both arguments are easily dismissed.  First, with respect to the

7  claim by Dynalectric, Defendants argue Dynalectric has settled this claim with WestLB, and thus no

8  longer seeks recovery against Defendants or Travelers.  To support this assertion, Defendants point to

9  Mr. Gardner's declaration, wherein Mr. Gardner states that "Dynalectric was paid in full for the work it

10  performed before May 5, 2008, when Highland terminated its construction contract." (Gardner Decl. ¶

11  25.)  Mr. Gardner also states that he is "aware that Dynalectric settled with the lender WestLB" because

12  he "learned this information from WestLB, among other sources." (*Id*.)  These assertions however are

13  unsupported conclusions not based on Mr. Gardner's personal knowledge, and do not demonstrate a

14  genuine dispute with respect to the viability of the Dynalectric claim.[32]

15       Second, with respect to the Allied, Angus, and Raymond claims, Defendants argue that it is

16  entirely possible that Allied will recover from TWD in the pending lawsuit, and Angus and Raymond

17  will recover out of the 5th Avenue bankruptcy proceeding.  Accordingly, Defendants contend specific

18  performance with respect to these three subcontractor claims are unwarranted because they are

19  speculative of Travelers' potential losses.  The Court is not persuaded.  As stated above, whether or not

20  Allied, Angus or Raymond will actually recover from Travelers under the Bond claims, or recover from a

21  third party is not determinative of Travelers' right to demand specific performance of the collateral

22  security provision in the Indemnity Agreement.  *See Safeco*, 739 F.2d at 433-34 (finding specific

23  performance should be granted after a demand on the bonds has been made, regardless of whether the

24

25  [31] This is further supported by Paragraph Five, which states, "[Defendants]  agree that company would suffer irreparable damage and would not have an adequate remedy at law if [Defendants fail to

26  comply with the provisions of this paragraph."

27  [32] Federal Rule of Civil Procedure 56(e) requires that affidavits submitted in support of a motion for summary judgment must: (1) be made on the personal knowledge of an affiant who is competent to testify to the matters stated therein, (2) must state facts that would be admissible in evidence, and (3) if

28  the affidavit refers to any document or item, a sworn or certified copy of that document or item must be attached to the affidavit. Fed.R.Civ.P. 56(e).

1   surety has paid out on the bond); *Am. Contractors Indem. Co. v. Bigelow*, 3:09-CV-8108-HRH, 2011 WL

2   5546052 (D. Ariz. Apr. 11, 2011) ("As long as plaintiff remains at risk for the full penal sums of the

3   bonds, defendants must post the $3,331,399.00 in additional collateral that plaintiff has demanded.").

4         Thus, as is the case here, where the evidence shows Dynalectric, Allied, Angus, and Raymond

5   have made claims on the Bonds, and Defendants have failed to offer sufficient proof negating the

6   continuing vitality of such claims, the Court finds Travelers is entitled to specific performance of the

7   collateral security provision in the Indemnity Agreement.[33]  Accordingly, the Court **GRANTS** Travelers'

8   motion for specific performance and Defendants shall immediately post collateral security in an amount

9   no less than $2,000,000.00.  However, as stated under the Indemnity Agreement, any amounts not

10   expended after all claims have been settled—including reasonable attorneys' fees—must be returned to

11   Defendants.[34]

12   **III.**    **Declaratory Relief**

13         In the alternative to its breach of contract claim alleging indemnification for monies already

14   expended on the Bond claims and specific performance of the collateral security provision, Travelers

15   requested summary judgment on its fourth cause of action for declaratory relief.  However, to the extent

16   the Court has granted Travelers' breach of contract claim, notwithstanding its claim for specified

17   attorneys fees the Court found not suitable for summary judgment on the evidence presented, the Court

18   **DENIES** Travelers' request for declaratory relief.[35]

19

---

20      [33] Defendants also argue that Travelers' specific performance cause of action should be denied because the Court previously denied Travelers' application for writ of attachment in January 2011.

21   (Doc. Nos. 14, 15, 16, 17, 18, 19, 20, 23, 24.)  This argument is unavailing because to obtain a writ of attachment a party must show, among other things, the "probable validity of the claim," whereas

22   specific performance is based in part on a showing of an inadequate remedy at law.  *See* Cal. Civ. Proc. 483.010(a).

23

24      [34] Pursuant to Paragraph Five of the Indemnity Agreement, amounts demanded as collateral security include attorneys' fees and costs in litigating the bond claims. (*See* Paragraph One, Definitions.)

25   However, as the Court has already stated, such fees must be reasonable.

26      [35] "Declaratory relief operates prospectively, serving to set controversies at rest. If there is a controversy that calls for a declaration of rights, it is no objection that past wrongs are also to be

27   redressed; but there is no basis for declaratory relief where only past wrongs are involved. Hence, where there is an accrued cause of action for an actual breach of contract or other wrongful act, declaratory relief may be denied." 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 869, p. 284, italics added;

28   *Osseous Technologies of Am., Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal. App. 4th 357, 366, 119 Cal. Rptr. 3d 346, 352.

1    **IV.    Defendants' Counter Claim**

2          Travelers also seeks summary judgment on Defendants' breach of contract counterclaim, wherein

3    Defendants allege Travelers breached the Joint Defense Agreement by "incurring excessive and

4    unreasonable attorneys' fees and costs in defense of the payment and performance bond claims."[36]  (*Id*. at

5    ¶ 60.)  Travelers argues summary judgment is warranted because there are no terms in the Joint Defense

6    Agreement that require Travelers to keep its defense costs at some minimum amount.  Conversely,

7    Defendants contend there is a genuine dispute regarding the terms of the Joint Defense Agreement in

8    light of Mr. Gardner's declaration, which states that Defendants and Travelers had previously entered

9    into an oral understanding to minimize their attorneys' fees, and that Mr. Gardner "understood" that the

10   Joint Defense Agreement contained the same terms as the previous oral agreement.  Travelers responds,

11   arguing that any prior or contemporaneous agreements between the parties, if any such agreements exist,

12   are excluded as volatile of the parol evidence rule.  Although Defendants contend Travelers only

13   attempts to "muddy the waters" by raising the parole evidence rule, the Court is not persuaded.

14   Therefore, as questions of contract interpretation are issues of law, the Court finds the present motion

15   suitable for summary adjudication.  *See Centigram Argentina, S.A. v. Centigram Inc*., 60 F. Supp.2d

16   1003, 1007 (N.D. Cal.1999) (citing *WYDA Assocs. v. Merner*, 42 Cal. App.4th 1702 (1996) 1710, 50 Cal.

17   Rptr.2d 323).

18        **A.    Parol Evidence Rule**

19          The parol evidence rule is codified in Section 1856 of the California Code of Civil Procedure, and

20   prohibits the introduction of extrinsic evidence, whether oral or written, to vary the terms of an integrated

21   written agreement or to add terms to an integrated agreement that is also intended as a complete and

22   exclusive statement of the parties' agreement. Code Civ. Proc., § 1856.  Under California contract law, a

23   parol evidence analysis is divided into two initial inquiries: "1) was the writing intended to be an

24   integration, i.e. a complete and final expression of the parties' agreement, precluding any evidence of

25   collateral agreements; and 2) is the agreement susceptible of the meaning contended for by the party

26   offering the evidence." *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc*., 971 F.2d 272, 276-77

27

28          [36] The Court previously denied Travelers' motion to dismiss this claim.  (Doc. No. 73.)  At that
     time, however, the parties had not provided the Court with a copy of the Joint Defense Agreement, nor
     had the parties made the arguments presently before the Court.

(9th Cir. 1992) (internal citations omitted).  Here, because the parties do not contest that the Joint

Defense Agreement does not contain an integration clause, which would be conclusive evidence on the

issue of integration, the Court must first resolve whether or not the Joint Defense Agreement is

considered an integrated contract  *See Banco Do Brasil, S.A. v. Latian, Inc*. (1991) 234 Cal. App. 3d 973,

1002-03.

//

### 1.    The Joint Defense Agreement Was an Integrated Contract

California courts utilize a four-part test to determine if an agreement is integrated.  *Id.*

> (1) does the written agreement appear on its face to be a complete agreement;
> obviously, the presence of an "integration" clause will be very persuasive, if
> not controlling, on this issue; (2) does the alleged oral agreement directly
> contradict the written instrument; (3) can it be said that the oral agreement
> might naturally have been made as a separate agreement or, to put it another
> way, if the oral agreement had been actually agreed to, would it certainly have
> been included in the written instrument; and (4) would evidence of the oral
> agreement be likely to mislead the trier of fact.

*Id*.  In resolving this determination, two additional policy considerations must be kept in mind.  *Id*. at

1002.  First, "the assumption that written evidence is more accurate than human memory."  *Masterson v.*

*Sine* (1968) 68 Cal. 2d 222, 227.  And second, the policy that "fraud or unintentional invention by

witnesses interested in the outcome of the litigation will mislead the finder of facts."  *Id*.  Taken as a

whole, these factors weigh in favor of finding the Joint Defense Agreement was an integrated contract.

First, although the Joint Defense Agreement does not contain an integration clause, on its face, it

purports to fully describe the relationship between the parties with respect to their intent that all

comminations regarding litigation of Bond claims were to remain privileged and private.  This fact is

even supported by Defendants, who state in their opposition, that "the joint defense agreement and its

terms are the only things at issue in Defendants' claims."  However, because Paragraph 8 states that

"[n]othing in this Agreement enlarges or diminishes any rights and duties of the parties to each other that

may exist by virtue of other agreements or law," the Court finds that the Joint Defense Agreement could

be referring to the Indemnity Agreement and/or the prior oral agreement alluded to by Mr. Gardner.

Thus, the Court finds this factor weighs against finding the agreement was integrated.

Second, there can be no question that the alleged oral agreement directly contradicts the written Joint Defense Agreement, and the Indemnity Agreement incorporated by reference therein.[37]  According to Mr. Gardner's declaration—a founding partner and principal of Defendant Highland Partnership—as early as May 23, 2008, after various subcontractors initiated lawsuits against Highland and Travelers, the parties decided to work together to defend the lawsuits to minimize their attorneys' fees and costs for all Project related litigation.  In late 2008, Travelers asked Highland to put the Joint Defense Agreement into writing.  Mr. Gardner then states that he understood that the Joint Defense Agreement contained the same terms that the parties were already operating under, including minimizing attorneys' fees and costs.

This however is entirely inconsistent with the language of the Joint Defense Agreement and the Indemnity Agreement, which was already in effect at the time the parties signed the Joint Defense Agreement.  For example, Paragraph Four of the Joint Defense Agreement states that "[n]othing in this Agreement shall be construed to affect the separate and independent representation of Highland and Travelers by their respective counsel according to what its counsel believes to be in the client's best interest.  No joint representation relationship is created or implied through this Agreement."  This clause is then reinforced by Paragraph One of the Indemnity Agreement, defining Loss as all "attorneys' and other professional fees," and Paragraph Eleven of the Indemnity Agreement, stating that "[Defendants] irrevocably constitute, appoint and designate [Travelers] as their attorney in fact with the right, but not the obligation, to exercise all rights of [Defendants]."  Moreover, Paragraph Four of the Indemnity Agreement, provides Travelers with the "sole discretion" to determine whether to settle, litigate, defend or appeal a Bond claim, and is counter to any alleged oral agreement requiring Travelers to minimize attorneys' fees.  Finally, the Court is at a loss to see why, if Defendants drafted the Joint Defense Agreement, they did not include an express provision requiring Travelers to minimize their attorneys' fees, and instead relied on oral representations made prior to the agreements execution.[38]  Accordingly,

---

[37] Paragraph Eight of the Joint Defense Agreement states, "Nothing in this Agreement enlarges or diminishes any rights and duties of the parties to each other that may exist by virtue of other agreements or law." (Doc. No. 107.)

[38] This is further supported by Mr. Gardner's statement that he "understood" that the Joint Defense Agreement included the prior oral agreement.  Thus, there are no allegations of fraud or negligent misrepresentation on behalf of Travelers.

the Court finds this factor weighs in favor of finding the Joint Defense Agreement was an integrated contract.

Third, by looking at the written Joint Defense Agreement and the Indemnity Agreement, the Court finds the surrounding circumstances necessitate a finding that if the alleged oral agreement required Travelers to minimize their attorneys' fees and costs was agreed to, the parties would have included such agreement in the Joint Defense Agreement, or some other written agreement.  It must be emphasized here that both parties are sophisticated and experienced businessmen, who were at all times advised and represented by their respective counsel.  Thus, to the extent the parties engaged in arms-length transactions, and drafted provisions of the Joint Defense Agreement and the Indemnity Agreement to meet their respective needs—neither of which was thereafter modified in writing as required under the respective agreements—the Courts finds this factor also weighs in favor of finding the Joint Defense Agreement was an integrated contract.

The final factor, whether or not the trier of fact would be mislead if allowed to consider the substance of the alleged oral agreement, also weighs in favor of finding an integrated contract.  Here, other than Mr. Gardner's self-serving declaration, Defendants offer no other evidence to support their assertion that such an agreement was made, or the exact substance of such agreement.  For example, Defendants do not include what parties made this agreement, when this agreement was made, or what the specifics of the agreement entailed.  Accordingly, the Court finds the Joint Defense Agreement was an integrated contract.

**2.      The Joint Defense Agreement is Not Reasonably Susceptible to the Meaning of the Alleged Oral Agreement**

Having concluded that the Joint Defense Agreement was integrated, the Court must consider whether the evidence of the alleged oral agreement is nonetheless admissible to explain the meaning of the written contractual language.  *See Pac. Gas & E. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37.  "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Gerdlund*,190 Cal. App.3d at 272.  However, as stated above, because the Court finds the alleged oral agreement is in direct contradiction to the explicit language of the Joint Defense Agreement,

27

1   it is not possible to say that the Joint Defense Agreement is reasonably susceptible to the proposed

2   meaning that could be supplied by the parol evidence offered by Defendants.

3        Accordingly, the Court **GRANTS** Travelers' motion with respect to Defendants' fourth cause of

4   action for breach of contract in their Counterclaim.  However, Travelers must be cognizant that although

5   the Court finds the Joint Defense Agreement did not explicitly require Travelers to minimize their

6   attorneys' fees, any attorneys' fees or expenses incurred as a result of the parties' written

7   agreements—the Indemnity Agreement and the Joint Defense Agreement—must be reasonable.

8   //

9   //

10                                    ***CONCLUSION***

11       For the reasons set forth above, the Court **GRANTS** in part and **DENIES** in part Travelers'

12   motion for summary judgment with respect to claims alleged in the FAC, and GRANTS Travelers'

13   motion for summary judgment with respect to the sole remaining cause of action in Defendnats'

14   Counterclaim. Specifically, the Court makes the following findings with respect to Travelers' instant

15   motion:

16       1.   **GRANTS** in part and **DENIES** in part Travelers' motion with respect to its First and

17            Second Causes of Action for statutory indemnity and breach of the Indemnity Agreement.

18            The Court **GRANTS** Travelers' motion with respect to monies already expended on Bond

19            claims and **DENIES** Travelers motion with respect to recovery of **$2,043,667.00** in

20            attorneys fees and costs.  Accordingly, Defendants are ordered to reimburse Travelers

21            **$1,549,187.00** for monies already expended in settlement of claims made on Defendants'

22            Bonds.

23       2.   **GRANTS** Travelers' motion with respect to its Third and Fifth Causes of Action for *quia*

24            *timet* and specific performance.  Accordingly, Defendants shall immediately post

25            collateral security in an amount no less than **$2,000,000.00**.

26       3.   **DENIES** Travelers' motion with respect to its Fourth Cause of Action for declaratory

27            relief.

28

1   4.  **GRANTS** Travelers' motion with respect to Defendants' Fourth Cause of Action for

2      breach of contract in Defendants' counterclaim.

3

4 IT IS SO ORDERED.

5

6 DATED:  November 26, 2012

7               _____

8               Hon. Anthony J. Battaglia
                U.S. District Judge

10cv2503 AJB (DHB)